# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## HILDRETH v. TURNER.

### April 13th, 1893.

1. JUDICIAL SALE—*Bidder*—*Failure to comply.*—A person who bid at a judicial sale of land and refused to comply with the terms of sale, and, at a re-sale, attempted to bid through an agent, in disregard of the terms of sale—

HELD :

    Such person has no standing to appeal from a decree confirming the sale to another person.

2. APPELLATE COURT—*Commissioner's report*—*Exceptions.*—Where a commissioner's report has been confirmed without exception in the court below, it is too late for the first time in this court to except to such report, unless it be erroneous on its face.

3. TITLE—*Investigation*—*Case at bar.*—A person to whom, at a commissioners' sale, property is cried off, is not entitled to any time to investigate the title before complying with the terms ; but, if such person were entitled thereto, in the case here—

HELD :

    She had ample time.

4. REJECTION OF BID.—Sale commissioners may decline to cry the bid of a person who refused to comply with the terms of a former sale, and who gives no satisfactory assurance of ability to comply with the terms of the second sale.

5. JUDICIAL SALE—*Diverse reports.*—Where two commissioners unite in advertising, and are both present at a sale, and one of them declines to join in the report, but makes a separate report, asking that a former sale be confirmed to a bidder who refused to comply with the terms, and that such bidder (though a non-resident) be required to show cause why said former sale should not be confirmed—

HELD :

    Validity of second sale not affected by said facts, and the court had no jurisdiction over such bidder.

Appeal from two decrees of circuit court of Fauquier county, one of which was pronounced on the 16th day of

December, 1890, and the other on the 20th day of April, 1891, in the chancery suit then pending in said court, wherein Edward C. Turner was plaintiff and James N. Bethune and A. D. Payne, trustee, were defendants.

On the 20th day of January, 1882, James N. Bethune executed his bond to the said Edward C. Turner for the sum of $4,000, payable five years after date, with interest from date, payable annually, and on the same day, to secure the payment of said bond, conveyed in trust to said A. D. Payne, trustee, a tract of land lying near the town of Warrenton, in said county, known as " Ellway," and containing 309¾ acres; on the 11th day of February, 1882, said Bethune executed to Turner a bond for $1,000, payable five years after date, with interest from date, payable annually, and on the same day, to secure the payment of said bond, executed to said A. D. Payne, trustee, a deed of trust conveying the same tract of land ; and on the 4th day of January, 1884, the said Bethune executed another bond to said Turner, for the sum of $1,000, payable five years after date, with interest from date, payable annually, and on the same day, the better to secure the payment of said bond, executed another trust deed to said A. D. Payne, trustee, conveying the same tract of land, in trust.

The said bond for $4,000, dated 20th day of January, 1882, and said first-named bond for $1,000, dated the 11th day of February, 1882, having become due and not paid, the said trustee was directed to execute said trust by a sale of the land in accordance with the terms thereof. The property was accordingly advertised for sale; but, before the sale, it appearing to the trustee that, by reason of the existence of a certain deed of indemnity on said land, executed by said James N. Bethune to secure his son, James A. Bethune, against loss on account of his suretyship for the said James N. Bethune on his bond as committee of " Blind Tom," there might arise difficulty in making a good title to said land, it

was thought advisable to have an account of the indebtedness of said James N. Bethune, constituting liens on said land.

Accordingly, on the 2d day of September, 1887, Edward C. Turner, the obligee in said three bonds, filed his bill in the circuit court of Fauquier county against James N. Bethune, the obligor in said bonds, and A. D. Payne, trustee as aforesaid, praying that an account be taken of the liens on said land and their priorities, for the appointment of a receiver, and for a sale of said land after said account should be taken and reported, and that in the mean time an injunction be awarded, restraining said trustee from making sale of said land.

The injunction was awarded according to the prayer of the bill, and a receiver was appointed. The defendants answered the bill, admitting the facts stated therein, and making no objection to the prayer of the bill. And on the 12th day of September, 1887, an order was entered in the cause, directing an account to be taken in accordance with the prayer of the bill; and on the 1st day of December, 1887, the master returned and filed his report, showing the liens and their priorities, and, among them, a judgment in favor of one J. Homer Hildreth for $1,671.20, which judgment had been recovered in the district court of the United States against said James N. Bethune; and on the 12th day of December, 1887, the said Hildreth filed his petition in the cause, asserting the lien of said judgment, and asking payment thereof out of the proceeds of the sale of said land.

For reasons appearing to the court, by a decree entered in the cause on the 17th day of December, 1889, a further reference to a master was made, to ascertain whether or not any liability had been incurred by James A. Bethune by reason of his suretyship for James N. Bethune as committee for "Blind Tom," and the amount thereof, if anything; and on the 15th day of September, 1890, the master reported that

from the evidence before him no such liability had been incurred up to that time.

There were no exceptions to either of said reports; and on the 16th day of December, 1890, a decree was entered in said cause, confirming both of said masters' reports, and directing Commissioners A. D. Payne and R. R. Campbell, who were appointed for the purpose, to make sale of the said land of said James N. Bethune, upon the following terms: Cash enough to pay costs of suit and expenses of sale, including commissions and the debt secured to Edward C. Turner by deed of trust; balance in one and two years, with interest from day of sale. And on the 23d day of February, 1891, the said land was, in pursuance of the terms of said decree, offered for sale by said commissioners, and was cried off to one Mrs. Sarah D. Birch, said to be of the state of New York, at the bid of $35 per acre, the bid having been made by said J. Homer Hildreth in her name; but, upon being called on by said commissioners to complete his said bid, by making the cash payment and executing and delivering the bonds for the deferred payments, he declined to do so, on the ground that he was advised by his counsel that he had sixty days, under the laws of Virginia, to investigate the title, &c.. He was thereupon called upon to pay cash enough to discharge the costs and expenses of sale, but he declined to do this also; whereupon the commissioners of sale determined to disregard the said bid of Sarah D. Birch, and continued the sale until the 7th day of April, about six weeks thereafter, on which day, (April 7th, 1891,) in the presence of both of said commissioners of sale, and also of said Hildreth, and no objection being made by any one, the said farm was again offered for sale, after due advertisement of time, place, and terms of sale. At this sale Mrs. Birch, the former bidder, through her agent (the said Hildreth) again attempted to bid, the said Hildreth announcing in advance that Mrs. Birch

would not comply with the terms of sale, in the event of her becoming the purchaser, until she had an opportunity of investigating title, &c.; whereupon Commissioner A. D. Payne directed the crier to disregard any bid made for her by said Hildreth. The sale then proceeded, and the land was cried off to' Mrs. A. B. Robinson and others, at $21.50 per acre, that being the highest bid offered. The said Mrs. Birch, if a person in being, was not a resident of Virginia, but a citizen of New York, and was never present at any of the proceedings above set forth.

On the 13th day of April, 1891, a petition was filed in the name of said Sarah D. Birch, supported by the affidavit of said J. Homer Hildreth, asking that said commissioners of sale be required to report the bid made by her on said 23d day of February, 1891, and that she be allowed time to examine title, &c., before complying with the terms of sale; and on the same day R. R. Campbell, one of said commissioners of sale, filed his report, asking that the sale to Mrs. Birch be confirmed, and also that a rule be issued against her to show cause why the sale should not be confirmed, and why the land should not be re-sold at her risk and cost, and admitting that the terms of sale had not been complied with by said Sarah D. Birch. And on the 20th day of April, 1891, A. D. Payne, the acting and only bonded commissioner of sale, filed his report, detailing the circumstances of said first offering of the land for sale, the bid made in the name of Mrs. Birch by her alleged agent, the said Hildreth, the refusal to comply with the terms of sale, the re-advertisement of the land, the presence at the subsequent sale of the land both of the commissioners of sale and of said Hildreth, the refusal to entertain a further bid in the name of Mrs. Birch by her agent, the said Hildreth, upon his declaration that he would not comply with the terms of sale, and also reporting the sale of the land, at said second offering, to Mrs. Robinson, Mrs.

Hansard, Mrs. Boyle, and Miss Bethune, at $21.50 per acre, and recommending, as the terms of sale had been complied with, that the sale to them be confirmed. And on same day (April 20th, 1891,) J. Homer Hildreth and Sarah D. Birch, by counsel, filed certain exceptions to said Commissioner A. D. Payne's report of sale.

. At the same time—to-wit, April 20th, 1891—the plaintiff in the cause, Edward C. Turner, having died, a decree was entered reviving the cause in the name of his executors, over-ruling the exceptions of J. Homer Hildreth and Sarah D. Birch to the report of sale made by Commissioner A. D. Payne, and confirming said sale, the decree reciting the fact that said Sarah D. Birch *had not tendered a compliance with her bid of the 23d day of February,* 1891, or of the 7th day of April, 1891, nor had an upset bid been put in. This decree, and that of the 16th day of December, 1890, contain the alleged grievances complained of by J. Homer Hildreth and Sarah D. Birch ; and from said decrees the case is here on appeal.

*Sands, Pollard & Sands,* for appellants.

*A. D. Payne,* for appellees.

RICHARDSON, J., (after stating the case,) delivered the opinion of the court.

Before proceeding to consider the case on its merits, it is important to ascertain the relations of the appellants to this cause.

I. Is the appellant, Sarah D. Birch, in any substantial, legal sense, a party to this suit, and has she any *locus standi* in this court ? We think not. She was not an original party, and, if in any sense a party, she can only claim to have

become such by her pretended attempt to become a purchaser, through her alleged agent, J. Homer Hildreth, on terms proposed by herself, and in disregard and defiance of the terms prescribed by the decree of sale. The facts disclosed by the record, as already stated, abundantly show that she has had no other connection with the case than to obtrude her peculiar ideas and plans upon the proceedings by the commissioners of sale, in obedience to the decree of court directing such sale; and that she thus obtruded, not to obey and secure the protection of that decree, but to disregard, disobey, and defy it, and its specific terms. She was never a bidder, legally speaking, either at the first offering, when she defeated the sale by failing and refusing to complete her pretended bid, by making the requisite cash payment and executing bonds for the deferred payments, or at the second offering, when she, through her said agent, again proposed to become a bidder in defiance of the prescribed terms of sale.

But concede, for the sake of argument, that she might, in a qualified sense, be treated as a bidder, yet, having failed to make good her bid, by making the required cash payment and executing bonds for the deferred payments, she did not, and could not, thus acquire the status even of an inchoate purchaser. She had not become a bidder even, and the court could not, in the absence of a completed bid, treat her as a bidder, accept her bid, and confirm the sale to her. There is a wide distinction between a bidder at a judicial sale and a purchaser. "Until confirmed by the court, the sale confers no rights. Until then it is a sale only in a popular and not in a judicial or legal sense." Rorer on Judicial Sales, p. 55, § 124. "By the purchase, the purchaser, at a judicial sale, becomes a *party* to the proceedings in which the sale is made." Id., p. 66, § 152. A bid at the commissioner's sale is a mere offer. 2 Barton's Ch'y Pr. 1094. By his purchase the purchaser becomes a *quasi* party to the suit. 2 Barton's Ch'y Pr., p. 1101, § 353.

In *Va. Fire and Marine Ins. Co. et al.* v. *Cottrell*, 85 Va. 857, Lewis, P., says: " Until the sale has been confirmed, the proceeding is *in fieri;* the bidder is not considered a purchaser, * * * nor is he compellable before confirmation to complete his purchase; but as soon as the sale is absolutely confirmed, then the contract becomes complete—the bidder, by the acceptance of his bid, becomes a purchaser, and he may be compelled by the process of the court to comply with his contract."

" The court affirms the sale or not at its discretion, and until affirmed the supposed sale is no sale, and confers no rights." Rorer on Jud. Sales, p. 10, § 15. But it is useless to multiply authorities in support of principles so long and thoroughly well settled. Sarah D. Birch, then, was not an original party to this suit, has done nothing since to entitle her to be considered a party, nor is she properly a party to this appeal; and, not being a party, she has no rights to demand, no wrongs to complain of, and no right of appeal. In fact, this court, from the record, cannot judicially know that Sarah D. Birch ever existed. As to her, therefore, the appeal must be treated as improvidently awarded.

II. Let us now look to the attitude of J. Homer Hildreth, and the complaints made by him. He is, in a qualified sense, a party—not originally, but by reason of his having filed, pending the suit in the court below, a petition asserting a claim against the defendant, James N. Bethune. In his petition he does not ask to be made a party, and is not formally made a party by any decree in the cause, but his debt is reported by the master.

The first ground of objection assigned by him is, that it was error to make sale of the land until the accounts of James N. Bethune, receiver, had been stated, and the rents of " Ellway " applied to the debt of Edward C. Turner. This objection is clearly without merit. By the decree entered in the cause on

the 12th of September, 1887, a master commissioner was ordered to take an account of the liens, and their priorities; on the real estate in question ; and said master took the account, and returned and filed his report thereof on the 23d of November, 1887; and the matter was again referred to the master to ascertain whether or not any liability had been incurred by James A. Bethune on account of his suretyship for James N. Bethune on his bond as committee of "Blind Tom," &c. This account was taken, and the report of the master was returned and filed on the 15th of September, 1890. By the decree of December 16th, 1890, both of these reports were confirmed, and without objection or exception to either of them. If there was any error in these reports, or either of them, the objection should have been pointed out, by proper exceptions, before said decree of confirmation. There is no error apparent on the face of either of said reports ; and it is too late now to ask for a reversal of the decree on the supposed ground of error assigned. The well-recognized doctrine is, that " exceptions partake of the nature of special demurrers, and hence, as the authorities say, the party excepting must ' put his finger on the error,' that the court may see what it has to decide. It is too late, however, to do so for the first time in the appellate court, unless the report be erroneous on its face." Lewis, P., in *Cralle* v. *Cralle*, 84 Va. 198. But, in point of fact, the land in question was rented for enough to pay the interest on the Turner debt, and the rent was so applied from year to year. There is, therefore, in no view of the case, anything in this objection.

The second ground of error assigned by J. Homer Hildreth is that the pretended bid of Sarah D. Birch at the offering of the tract of land, "Ellway," on the 23d day of February, 1891, was not accepted, and time given her (sixty days) within which to examine into the title. The proposition itself is

preposterous in the extreme; and there certainly is nothing in law or practice in this state to sustain it. But this objection is but a re-hash of the case attempted to be set up for Sarah D. Birch, which, as already shown, is no case at all. Here Sarah D. Birch, if a real entity, had all the time during which " Ellway " was advertised for sale, prior to the 23d day of February, 1891, when the land was first advertised to be sold, and when the sale was defeated by her refusal, by her said agent, to comply with the prescribed terms of sale, by making the requisite cash payment and executing bonds for the deferred payments. She then had from the 23d day of February until the succeeding 20th day of April, the time when the sale was confirmed, being fifty-six days, within which to examine into the title to the property. Surely this was ample, and more than ample, time; but during all this period she fails to comply with the terms of sale, by offering to make good her said pretended bid. Under these circumstances the court below, in its decree of confirmation, said, and properly said: " And it appearing that no upset bid has been made for the property in the bill and proceedings mentioned, *and that Sarah D. Birch has not tendered a compliance with her bid* of the 23d of February, 1891, it is further adjudged, ordered, and decreed that the report of A. D. Payne, commissioner of sale, be, and is hereby, confirmed," &c.

The language of the report of the 20th of April, 1891, shows that both commissioners were present together at each bidding; that no objections were made to the offering of the land for sale on either occasion; that both commissioners united in the advertisement of the land at each offering—that is, on the 23d day of February, 1891, and on the 7th day of April, 1891, at the latter of which the sale was effected. And while a copy of the advertisement is not made a part of the record, as it should have been, yet it was stated in argument, and not denied, that an inspection of it will show that it specified the

time, place, and terms of sale, and was signed by both commissioners. It was, therefore, a sale by both commissioners; and its validity cannot be affected by the fact that one of them (Commissioner Campbell) declined to join in the report, and made himself a separate report, asking, in effect, that the sale to Mrs. Birch be confirmed, and also for a rule against her to show cause why the sale should not be confirmed to her ; thus blending two inconsistent and impossible things, both of which were beyond the power of the court. First—Sarah D. Birch, by her said agent, at the offering on the 23d of February, 1891, refused to make her bid good, by complying with the terms of sale, and was, therefore, not a bidder proper, much less a purchaser. Second—she, if in existence, was a non-resident of this state, and therefore beyond the jurisdiction and power of the court.

The commissioners, when the property was the second time offered for sale, and Mrs. Birch, through her said agent, Hildreth, declared her purpose to repeat her farce of February 23d, had the right, and it was their duty, to see that the sale was not again defeated by such means. " The commissioners may decline to permit the auctioneer to announce the bids of persons who give no satisfactory assurances of their ability and willingness to comply, for *bona-fide* bidders are entitled to that protection. 2 Bart. Ch'y Pr., p. 1079, § 340. So an insolvent purchaser at a judicial sale, who declares himself unable to give a bond that day for the payment of the price, cannot, as a matter of right, demand time to procure the bond, where he gives no satisfactory assurance of his ability to do so, and re-sale may be had under such circumstances." U. S. Gen'l Digest, Vol. V., p. 1302, § 9. This doctrine is especially applicable in a case like this, where the parties complaining have once baffled the commissioners, and openly proclaim their purpose to do so again.

In the conduct of Sarah D. Birch, and of her agent, J.

Opinion.

Homer Hildreth, there is much to blame—nothing to commend. Neither of them have any just cause of complaint.

The decrees complained of are, under the circumstances, entirely proper, and the same must be affirmed.

DECREES AFFIRMED.