# WHEELING.

TRIMBLE, ADMR. *et al. v.* HEROLD.

·Submitted January 20, 1881—Decided November 18, 1882

(*SNYDER, JUDGE, Absent.)

1. This Court will not set aside a sale of land made by a commissioner on the ground of inadequacy of price, where there had been four sales of the land, three of which had been set aside, the first for inadequacy of price, the second because of cloud on the title, and third on an upset bid.   (p. 611.)

2. If before the confirmation of a sale the report of sale be excepted to, on the ground that the decree ordering the sale failed to fix the amounts and priorities of the liens charged thereon, and it clearly appears to the court, that the debtor was materially prejudiced in the sale of the land thereby, the land on that account being actually sold for a price materially less than it otherwise would have sold for, the court in the exercise of a sound discretion may for such reason refuse to confirm such sale, and set it aside.   (p. 612.)

3. A decree will not be reversed at the instance of the appellant for errors not prejudicial to him.   (p. 613.)

Appeal from certain decrees of the circuit court of the county of Pocahontas, rendered respectively on the 5th day of May, 1875, the 6th day of October, 1875, and on the 4th day of May, 1876, in a cause in said court then pending, wherein John Trimble, admr., was plaintiff and Benjamin Herold was defendant, allowed upon the petition of said Herold.

N. Harrison, special judge, rendered the decrees appealed from.

JOHNSON, PRESIDENT, furnishes the following statement of the case:

In January, 1869, John Trimble, administrator of the estate of Jacob Harper, and David and John Hanna instituted a suit in chancery in the circuit court of Pocahontas county

---

*Cause submitted before Judge S. took his seat on the bench.

against Benjamin Herold. The subpœna was served on the defendant Herold on the 26th day of January, 1869. The bill alleged, the recovery of various judgments against the defendant, and that he was the owner of a number of tracts of land described as follows: "Lying in Pocahontas county, to-wit, twelve and one-half acres, one hundred and twenty-nine and one-half, fifty, one hundred and ninety, fifty, four hundred, five hundred, two hundred, three thousand nine hundred and seventy acres, and also shares in other tracts of land, as will appear from title papers herewith filed as part of this bill." The bill prayed for an account of the various liens on said lands, their amounts and priorities, and that said lands might be sold to pay the same, &c. On the 5th day of June, the cause was referred to a commissioner according to the prayer of the bill. On the 6th day of October, 1869, the report of Commissioner Clark, to whom the cause had been referred, having been filed and there being no exceptions thereto, was confirmed by the court. In the decree entered on said 6th of October, 1869, confirming said report is the following: "And it appearing from the said report that the defendant Herold is largely indebted, to the plaintiff, also two other judgment creditors not parties to this suit, whose judgments at law are liens upon the defendant's lands in the bill and proceedings mentioned, and that the judgments at law are unavailable, and that a sale of the defendant's real estate is necessary to the payment of said liens, and the defendant by his counsel, and the plaintiffs by their counsel both consenting and desiring, that the judgment-creditors of the defendant, as reported by the said commissioner, and who are not now parties to this suit, may be permitted to come in without further suit or process, and have their respective claims litigated and adjusted in this suit, and the said creditors by their counsel consenting and desiring without any further process or proceeding to be bound by the decrees of the court in the cause in the same way, as if they were parties to this suit, on consideration whereof," Sherman W. Clark, the general receiver of the court, was required to advertise the lands in the bill and proceedings mentioned designating the newspapers in which such notice of sale should be published, &c. The said report of commis-

sioner ascertaining the liens and their priorities is not in the record.

On the 6th of April, 1870, so much of the above order, as appointed S. W. Clark to make the sale, was annulled, and John M. Lightner was appointed in his stead. The first report of the sale of lands by Commissioner Lightner is not in the record; but it appears from a decree entered in the cause on the 12th day of September, 1872, that such sale was made, as said decree contains this language: "This cause came on again to be heard, this 12th day of September, 1872, upon the papers formerly read and the report of sale made on the 20th day of June, 1872, by John M. Lightner, commissioner appointed for the purpose, with exceptions thereto by defendant, Benjamin Herold, that said lands sold for an inadequate price, which exceptions are sustained by the affidavits of sundry witnesses; therefore it is adjudged, ordered and decreed, that said sale be set aside and annulled, and that said commissioner proceed to make sale of said land in pursuance of the decree of sale heretofore made in this cause."

On the 5th day of May, 1873, the defendant, Herold, answered the bill, in which he avers, that the title of a part of the lands sought to be subjected to the judgment-liens, known as the "Elk lands" was in dispute in a suit then pending in the district court of the United States, at Harrisonburg, Virginia; that respondent had written for a copy of the record of said suit and, when obtained, would file it. He also averred, that the United States claimed a part of the lands known as the home-place, sought to be subjected to the payment of the lien; that the United States claimed this land by virtue of proceedings against respondent had in the United States district court at Charleston, W. Va.; that a copy of the record of said proceedings would be filed as soon as obtained; that a title to a large part of the "home-place" was in controversy in a suit pending in said United States court at Charleston, West Virginia, in a suit, wherein Randall is plaintiff, and Wm. S. Keen and others are defendants. He avers that he believes he has good title to said lands, and hopes to establish his title thereto, but is satisfied, that the pendency of said suits will deter purchasers from bidding on

said lands, under a decree rendered in this suit. Respondent prayed that the sale be set aside, and that said lands be not sold, until the titles of the same are settled.

On the 5th day of May, 1873, the cause was heard on the papers formerly read, the answer of Benjamin Herold, with replication thereto, the report of sale of commissioner John M. Lightner and exceptions thereto, and the affidavits in support thereof; and the court set aside the said second sale, and referred the cause to commissioner, Geo. H. Moffett, with directions to ascertain the character of proceedings instituted against Benjamin Herold involving the title of said Herold, to the lands or any part thereof, sought to be subjected in this suit to the payment of the lien thereon, and whether the cloud resting on said title was sufficient to injure the sale of said lands; and said commissioner was further directed to report, any other liens on said lands with their priorities. On the 2d day of September, 1873, commissioner Moffett reported another lien on said lands and also reported, that by the affidavit of General Wm. Skeen it appeared, that a portion of the land claimed by Herold belonging the to home-tract is covered by a survey, which is claimed by Skeen and McNeel; what quantity is so embraced cannot be ascertained without a survey; but that "commissioner is free to state, that in his opinion if Skeen and McNeel have a good title to their land, it will not materially injure the sale of the home-place, as it will not include any improved land or much, that is susceptible of improvement, that the United States government, by its agent did sell a certain piece of land on which the still-house stands on the home-place, but whether the government has perfected its title to the same, commissioner has no means of ascertaining, nor is he able to ascertain the exact quantity so sold, but thinks from all the information he could gather, that it would not exceed ——— acres; that by the affidavit of Colonel Wm. H. Terrill it appears, that one Pennell Churchman did claim title to three thousand nine hundred and ninety-one acres of the Herold land lying on Elk, and that an ejectment suit was instituted in the United States district court at Staunton to recover said land from Herold, but that said suit has never been brought to an issue, and its exact status can

not be ascertained without obtaining a copy of the record in the cause; that commissioner has no evidence, that Churchman is prosecuting his suit, nor that he intends to do so; that if the cloud was removed from the Elk lands, there would be nothing that would materially injure the sale of the other lands.

On the 19th day of May, 1874, the plaintiffs issued a subpoena against the defendant Herold, Mary, his wife, Susan Mayers, William Haymond and wife, and Selby Sapp and wife to answer an amended bill filed by original plaintiffs for themselves and all other creditors of Benjamin Herold. The subpoena was returnable to July rules thereafter. This subpoena was served on all the defendants. On the 28th of November a subpoena was issued making Andred Herold, and the administrator of Josiah Herold defendants to the bill which was duly served. The amended bill sets out a large number of judgments against Herold, &c., and prays the enforcement of the liens against the lands of defendant, Herold. It names the creditors as plaintiffs, and also names all the defendants named in the different subpoenas. On the 7th day of October, 1874, a decree was entered in the cause upon the papers formerly read and the amended bill, and without settling anything recommitted the report of Commisioner Moffett with directions to ascertain, first, the amount of legacies, charged on home-place, by will of Christopher Herold, second, the judgment liens and their priorities, third, whether any, or any part, of said judgments had been paid, fourth, whether the suit of Churchman pending in United States court, and whether any other suits are pending affecting the title to said land, if so, where, &c.

On April 1, 1875, Commissioner Moffett filed his report ascertaining the whole amount of the liens against the lands to be eighteen thousand and ninety-five dollars and fifty-eight cents, and fixed their several amounts and priorities. He also reported, that the legacy to Elizabeth Ann daughter of testator Christopher Herold, had been paid, and all other legacies had been paid, except those reported in favor of Sarah Ann Haymond and Susan Mayes. He further reported, that he believed from evidence filed before him, that the suit of Churchman in the United States court, had been dismissed

or abandoned, and was no longer pending. That the land claimed by the United States, is nothing more than the space, upon which Herold's still-house is located, and does not embrace more than one acre, if as much; that with this exception the title to the home-place is undisputed; that the land said to interlock with Skeen's lands is of little value; that Benjamin Herold is, and for a long time has been, in undisturbed possession of all the said lands.

On the 5th day of May, 1875, the cause came on again to be heard on the papers formerly read; and the process duly served on Andrew Herold and on the administrator of Joseph Herold, also on Commissioner Moffett's second report, which was not excepted to, and the report was in all things confirmed, and "John M. Lightner and J. M. Seig either of whom may act" were appointed commissioners to sell all the lands of Benjamin Herold, in the bill and proceedings mentioned, and prescribed the terms, upon which the sale should be made, and how the sale should be advertised, and directing the commissioner "to sell said lands altogether or in parcels, as they deem best." The said commissioner reported the sale of all said lands.

D. V. Ruckman filed his petition in the cause showing, that he was a creditor, when debt was reported, and filed an upset bid, amounting to near two thousand dollars more than the sum, for which said lands were sold, and filed with his petition bonds for said advanced bid. Benjamin Herold also tendered his petition alleging that Commissioner Moffett was one of his counsel in the case, and he was pleased with the reference to him of the case; that he was negotiating a private sale of his lands, which were very valuable, by which he would be able to pay all his debts, without having his lands sacrificed by sale under a decree, and for this among other reasons, he felt a deep interest in the account to be taken; and that he made frequent applications to said Moffett, to know if he had taken said account, preceding and up to the third or fourth day of the May term, 1875; and that said commissioner informed him no account had been filed, and that he was not commissioner, and that there would be no decree at that term of the court; that he had one other counsel, who informed him, that he had

frequently applied to said Moffett, to know when he would take said account, and was informed by said Moffett, if he was commissioner, he did not know it; that two or three days before the commencement of the May term, 1875, petitioner invited said Moffett to the sick room of his other counsel, when the matter was talked of, and Moffett again said, if he was commissioner he did not know it, but if so, there would be no report at the ensuing term of court; that he had no knowledge, that a report had been filed, until he was informed by the judge of the court, that a decree had been pronounced directing the sale of his lands; that if he had known of the filing of the report, he would have excepted thereto, for the following reasons: that judgments reported had been fully paid; that considerable amounts had been paid on other judgments; that the report was but a copy of the report of Commissioner Clark; that since the filing of Clark's report, some judgments had been paid by sale of personal property, under executions issued from the Clerk's office; that there are judgments not reported. He says he understands and therefore, charges that the counsel for plaintiffs procured the report or a copy thereof of S. H. Clark and took it to the State of Virginia and had it copied with some immaterial alterations and brought the same with him at the May term, 1875, and by connivance with said Moffett procured him to adopt said report, to which is added a supplemental report, ante-dated, and the petitioner had no notice of the taking of said report; that under the decree rendered on said account so taken, there had been a sale of his lands made at a great sacrifice; that he therefore prays, that the said sale may be set aside, and that the decree be set aside, ordering the sale, and that the account be recommitted, to enable the petitioner to show the payments which he had made on said judgments.

On the 6th day of October, 1875, the court entered a decree in the cause reciting that the cause came on to be heard upon papers formerly read, upon the report of sale by Commissioners Seig and Lightner, the petition and upset bid of David V. Ruckman filed, the petition of Benjamin Herold for a review of a decree in the cause, and refused the prayer of the petition of said Herold and dismissed the peti-

tion, and reciting the substance of Ruckman's petition, set aside the sale, and then ordered, that said Commissioners Seig and Lightner, are again directed to offer said lands for sale, upon the terms and at the place prescribed in the decree, under which they made the last sale, &c.; that said "home-land" charged with the payment of legacies by the will of Christopher Herold, shall be offered separately from the Elk lands and sold free of any dower, right or interest vested or contingent of Mary Herold, the wife of Benjamin Herold." And it being suggested, that there were other liens against Benjamin Herold not yet reported, the cause was referred to Commissioner Warwick to report any additional liens and their priorities and also to give said Herold any credits, to which he may be entitled on judgments reported by Commissioner Moffett in his report No. 2, filed in the cause. "And by consent of the parties by their attorneys the commissioners aforesaid are authorized to sell privately, if in their judgment the lands directed to be sold can be sold at a better price privately than publicly."

On the 28th day of April, 1876, J. M. Lightner signing himself "surviving commissioner," J. M. Sieg having died in December, 1875, made his report of sale, in which it appeared, that the Elk lands, were sold at nine thousand dollars, the amount of the upset bid, of Ruckman to him, no one bidding more, that the "home-place" was started at the upset bid of seven thousand dollars, but Henry White bid seven thousand one hundred dollars, and his being the best bid, the "home-place" was sold to him.

Benjamin Herold now comes in with another petition, in which he prays, that the sale may be set aside, 1st, Because Lightner was not authorized to sell alone, the power being in him and Sieg jointly: 2d, For reasons stated in eleven affidavits filed, that the lands sold at an inadequate price; 3d, For reasons stated in the affidavits of James W. Warwick and James Barlow, he prays for the first time in the suit, that the exact quantity of the land to be sold be ascertained, and be stated in the decree ordering the sale. That the Elk land be described and offered in lots of five hundred, (less or more) acres, that the sale be set aside because the decrees, under which the sales have been made, were defect-

ive, without authority and void. The affidavits of Warwick and Barlow relate to a sale of said lands that took place in 1875, and need not be considered.

Herold filed formal exceptions to the report, and objected to the confirmation of the sale. First, because each tract was sold as containing less than it actually contained. This does not appear in the record. Second, because the decree under which, the lands were sold, failed to state the quality of continuous tracts making the tract known, as the "home-place." Third, because the report of commissioner describes the land differently from the description in bill. A number of other exceptions were taken not necessary to notice.

Commissioner Warwick's report, was filed at the same term of the court, at which the sale was confirmed. He reports several additional liens, but no further credits to any of the judgments.

On the 4th day of May, 1876, the cause was further heard, upon papers formerly read, the report of sale made by Commissioner Lightner, exceptions thereto, and affidavits filed in support of exceptions, and report of Commissioner Warwick, to which there was no exception. The decree confirmed Warwick's report, overruled all the exceptions to report of sale and confirmed the same, directed a writ of possession to put the purchasers in possession of the lands bought by them, and referred the cause to R. S. Turk commissioner, to ascertain what part of the purchase-money of the home-place, Mrs. Mary Herold was entitled to on account of her contingent right of dower, and postponed the distribution of the funds until the next term of the court. From this decree Herold appealed.

No appearance for appellant.

*Adam C. Snyder* for appellees cited the following authorities: Code ch. 132 § 8; 9 W. Va. 695; 21 Gratt. 436; 4 W. Va. 600; 15 W. Va. 763; 1 Bro. C. C. 1; 2 John. ch. 23; 3 John. 216; 4 *Id.* 41; 8 *Id.* 257; 9 Paige 259; 10 *Id.* 487; 3 Sandf. 35; 25 How. Pr. 403; 1 Wisc. 471.

JOHNSON, PRESIDENT, announced the opinion of the Court:

It is claimed, that when some of the decrees were rendered,

the proper parties were not before the court.   It appears from the extended statement made, that the proper parties were all before the court before the land was finally ordered to be sold, and before the proceeds of the sale were ordered to be distributed.   The decree will not be reversed, because all the parties were not before the court, when every decree was made. It is enough, that the rights of no one are prejudiced in his absence.

It is insisted, that the sale made on the 22d of April, 1876, ought to have been set aside, because it appears from the affidavit of the defendant Herold and eleven others, that the lands sold for a grossly inadequate price.   It appears by the decree of 12th September, 1872, that a sale of the lands was set aside, because the price, for which they sold, was inadequate ; and that by decree of May 5, 1873, the second sale of said lands was set aside, because a cloud rested on the title, as appeared by affidavits filed ; that by a decree rendered on the 6th day of October, 1875, the third sale made in the cause of said lands was set aside on the upset bid of D. V. Ruckman.    The fourth and last sale was made on April 22, 1876. While it has been repeatedly decided by this Court, that gross inadequacy of price alone may be a sufficient ground for setting aside a judicial sale, yet we cannot hold, that, where there have been three sales, set aside, the first for inadequacy of price, and the third on an upset bid, the fourth would be set aside for mere inadequacy of price.   Under such circumstances the repeated sales afford a better test of the value of the land, than mere affidavits.

But it is also insisted, that the report of sale ought not to have been confirmed, and that the sale should have been set aside, because the amount and priorities of the liens were not fixed, when the sale was ordered.   It was error to order the sale, when the liens and priorities, which had been fixed by a prior decree, were by the decree ordering the sale unsettled, by the reference of the cause to a commissioner to permit credits to be proven.   Will this exception to the report of sale avail the defendant?   In *Kuble* v. *Mitchell*, 9 W. Va. 492, it is held, that a sale by a commissioner made under a decree of a court of equity is not an absolute sale in West Virginia, and does not become absolute, until it is con-

firmed by the court; and that the court may in the exercise of a sound discretion, either affirm or set aside the sale, where from the facts, evidence and circumstances before it, it appeared clearly the sale was made for a greatly inadequate price; that the bid made by the purchaser at the sale must be considered as his offer to the court through its commissioner, and in making it he agrees to be bound thereby, if it is accepted and approved by the court; and it is discretionary with the court, whether it will accept the bid and confirm the sale, or set it aside. But this discretion is not an arbitrary one, it should be correctly exercised, as it is liable to review in the Appellate Court. If the commissioners are guilty of misconduct at the sale, by which the rights of the debtor are, materially, prejudiced, by a fair price not being obtained, this would be sufficient to set aside the sale. There is a great difference between the power of the court over the sale, before, and after confirmation. After confirmation, no error of any kind, in the decree ordering the sale, not affecting the authority of the commissioners to make it, can disturb the sale or affect the purchaser's rights thereunder. But before the confirmation, if exception be made to the report of sale, on the ground that the court erred in the decree ordering the sale in such a manner, as was calculated to affect the bidders at the sale, and consequently, the price, at which the lands would sell, as if the sale should be ordered, before the liens and their priorities were fixed, and in support of such exception the debtor would show, that he actually suffered material injury thereby, in the lands selling for materially less, than it otherwise would, it seems to me, that the court has the power, and under such circumstances would exercise it, to refuse to confirm the sale and set it aside. No presumption against the sale would be made in such a case; and the court would only set it aside for such error in the decree, when it was made clearly to appear, that the lands actually sold for materially less, because of such error. The court would not refuse to confirm a sale and set it aside because of an error in the decree ordering the sale, unless such error, did have the effect, to bring the lands to a sale, under such circumstances, as in fact did cause them to be sold at a price materially less, than they would have

brought, but for such error. *Hughes* v. *Hamilton*, 19 W. Va. 366.

There is nothing in this record, to show, that Herold was injured in the slightest degree by the error, in the decree ordering the sale. There is no evidence, that the property was sold for a dollar less, than it otherwise would have sold for, if such error had not been committed. No creditor came forward and testified, that he was prevented from bidding on the property, because he could not tell, whether he could have saved his debt by such bid or not, nor testified that he would have paid a certain amount more for the land, if his lien had been certainly fixed, so that his debt could have been saved by such increased payment for the land.

None of the other exceptions were to errors which could have in any way have affected the sale of the land, and were therefore properly overruled. The decree confirming the sale cannot be reversed. The error in the decree ordering the sale of the land could only be prejudicial to the defendant, Herold, in so far as it might affect the sale of the land; but, as the decree confirming the sale of the land cannot be disturbed, he is not now prejudiced by said decree. None of the errors assigned are to the prejudice of the defendant, Herold; and the decree complained of cannot be reversed therefor. The facts, that Mrs. Mary Herold was made a party to the suit, and that a part of the land was sold free from her contingent right of dower, and that the court has decided to pay her from the proceeds of the sale of the land, are not to the prejudice of the defendant, Benjamin Herold, and no one else complains of it.

For the foregoing reasons the decrees rendered in this cause which are appealed from are affirmed with costs, and thirty dollars, damages.

JUDGES HAYMOND AND GREEN CONCURRED.

DECREES AFFIRMED.