# CHARLESTON

## GIBONEY *v.* COOPER & COOPER.

Submitted September 8, 1904.   Decided January 31, 1905.

1. —APPEARANCE— *Waiver of Process.*

   A general or voluntary appearance in a case by a defendant named therein, is equivalent to service of process and confers jurisdiction of the person on the court.   (p. 76.)

2. APPEARANCE — *Waiver of Defect in Process.*

   A general appearance waives any defect in the process, and confers jurisdiction of the person.   (p. 76.)

3. JUDGMENT FOR MORE THAN CLAIMED IN WRIT. —*Excess—Jurisdiction.*

   Where, in an action of *assumpsit,* judgment is rendered for a greater sum than the damages laid in the writ and declaration, the appellate court will not review such judgment, when such excess of damages is not sufficient to give said court jurisdiction.   (p. 76.)

Error to Circuit Court, Ritchie County.

Action by L. P. Giboney against S. J. Cooper and Hugh Cooper.   Judgment for plaintiff and defendants bring error.

*Affirmed.*

H. B. WOOD and McCLUER & McCLUER, for plaintiffs in error.

J. NEWMAN and S. ROBINSON, for defendant in error.

McWHORTER, JUDGE:

This is an action of *assumpsit* brought in the circuit court of Ritchie county by L. P, Giboney against S. J. Cooper and Hugh Cooper, late partners as Cooper & Cooper.   The declaration contains only the common counts, and plaintiff filed with his declaration an account as follows:

Goose Creek, W. Va., Nov. 27, 1902.

S. J. Cooper & Cooper to L. P. Giboney,   Dr

| | |
|---|---|
| To note dated July 22, 1901 | $300.00 |
| To interest to Nov. 27, 1902 | 1.80 |
| To protest charges and protest | 1.10 |
| | $302.90 |

accompanied by an affidavit as required by statute.   The writ was served only upon the defendant Hugh Cooper, and

was returned not found as to S. J. Cooper. An order of
publication was taken up on affidavit of non-residency to
S. J. Cooper, and on the 26th day of February, 1903,
the defendants appeared and filed a counter-affidavit deny-
ing that the defendants, Cooper & Cooper, were indebted
in any sum to the plaintiff, L. P. Giboney, on the demands
stated in the plaintiff's declaration; and moved to set aside
the office judgment had at rules, which was done, and the
defendants demurred to plaintiff's declaration in which
demurrer the plaintiff joined, and the demurrer being con-
sidered, was overruled, and on motion of defendants, they
were given thirty days in which to file special pleas in the
case. Afterwards on the 20th day of June, 1903, the defend-
ants entered their general plea that they did not owe the
plaintiff the amount of money claimed in his declaration, or
any part thereof, and a jury was empaneled and sworn to try
the issue, and after hearing the evidence, returned a verdict
in favor of the plaintiff, assessing the damages at $312.00.
The defendants, by counsel, moved the court to set aside the
verdict and grant them a new trial, because the said verdict
was contrary to the law and the evidence, of which motion
the court took time to consider; and on the 24th day of June,
the court overruled the motion to set aside the verdict and
grant a new trial, and rendered judgment against S. J. Coop
er and Hugh Cooper, late partners as Cooper & Cooper, for
the sum of $312.00, with interest thereon from the 20th day
of June, 1903, until paid, and his costs. Upon the trial of the
case, the defendants tendered their bill of exception, marked
No. 1, which was signed, sealed and saved to them on the
record. The defendants procured from one of the Judges of
this Court, a writ of error. The first error assigned is the
overruling of the demurrer to the plaintiff's declaration. The
declaration is the ordinary declaration in trespass on the case
in *assumpsit* on the common counts. No grounds of demur-
rer are shown, and the declaration appears to be sufficient.
See section 29, chapter 125, Code. Defendants, by their
counsel, in their brief claim that the court erred in rendering
a personal judgment for any amount against S. J. Cooper,
one of the defendants, and refusing to set aside said judg-
ment, because said S. J. Cooper had not been served with
process in the case, and no appearance was ever entered

therein by said S. J. Cooper or any one for him. There were
but two defendants named in the writ and declaration; S. J.
Cooper and Hugh Cooper, and quite all the orders show that
the "defendants" appeared. On February 26, 1903, "the
defendants demurred," which demurrer was overruled, then
"on motion of the defendants, they were given thirty days
in which to file special pleas herein;" and in June, 1903, in
open court, after stating the style of the case, the order says:
"This day came the parties to this action by their counsel,
and the defendants, for plea to the plaintiff's declaration say
they do not owe the plaintiff the amount of money or any part
thereof in his declaration, alleged, and issue is thereon joined,
and thereupon came a jury," etc., and all the motions in the
case to set aside the verdict and grant them a new trial, and the
exceptions and objections to the rulings of the court were all
by "the defendants" in the case, and not by "the defendant."
The general appearance in the cause of both of the defen-
dants, is too marked to leave any question as to the ap-
pearance. "A general or voluntary appearance is equivalent
to service of process and confers jurisdiction of the person
on the court. Hence a defendant is estopped to object for
want of jurisdiction where he has appeared generally, and it
is held to be immaterial whether he be a resident or non-res-
ident." 3 Cyc. 515, *Id.* 517. In 2 Enc. Pl. and Pr. 614, it
is said: "The prosecution of an appeal by a defendant not
summoned, and who did not appear, is an appearance to
the action," and, *Id.* 617, "Any acquiescence in the proceed-
ings of a suit in the Appellate Court will be regarded as a
general appearance." *Id.* 621: "It is a familiar rule that a
general appearance waives any defect in the process, and con-
fers jurisdiction of the person." *Smith* v. *Johnson,* 44 W.
Va. 278. And it is alleged as error that the court rendered
judgment for $312.00 damages, being in excess of damages
laid in the writ and declaration, which was only $302.90. If
this is error, it is only an error of $9.10, and this Court would
have no jurisdiction, Upon the trial of the case, the plaint-
iff offered in evidence a note together with the certificate of
the Notary Public, protesting said note, dated the 20th day
of October, 1902, and the aggregate of said note and
protest fees for the amount laid in the declaration and sum-
mons, $302.90, to the introduction of which note and certifi-

cate of protest, counsel for defendant objected, for the reason
that the note of Cooper & Cooper was not the note of S. J.
Cooper & Cooper, the declaration recited that they were
partners as Cooper & Cooper. Objection was made to the
note and certificate of protest. The objection was overruled
and the note permitted to be introduced, and the court took
time to consider as to objections to the certificate of protest,
which was later also permitted to be introduced. The note
with endorsements thereon is in the following words and fig-
ures:

"$300.00. Cairo, W. Va., July 22, 1902. Ninety days after
date for value received, we promise to pay to the order of L.
P. Giboney, Three Hundred Dollars negotiable and payable at
The Bank of Cairo, Cairo, W. Va. S. J. Cooper & Cooper.
Former No. ............ Postoffice............ (Stamped across the
face of note:) Protested October 20, 1902. Geo. H. Carver,
Notary Public. (Endorsed on back of note:) L. P. Giboney."

The certificate of protest as introduced, shows the note to
be signed with no marks through the letters "S J" before
Cooper and Cooper. After the admission of the certificate
of protest, the court gave the following oral instruction to
the jury: "Gentlemen of the jury, you are instructed that
if you believe from the evidence in this case that at the time
the note was delivered by the maker it was signed merely in
the firm name of Cooper & Cooper, then you will find for the
plaintiff in this case the amount of the note in controversy;
however, if you should believe from the evidence that at the
time it was delivered it was not so signed, but that the
letters S. J. were on the note and were not erased or marked
out, then you should find for the defendant in this case," to
which instruction counsel for plaintiff objected and ex-
cepted. The note was introduced in connection with the oral
testimony of L. C. Giboney, who acted for the plaintiff, his
son L. P. Giboney, in selling and delivering to the defend-
ants, or S. J. Cooper, the wagon, horses and outfit for which
the note was given. The only question in the case is really
whether S. J. Cooper purchased the property on his indi-
vidual account with the knowledge of that fact of said Gib-
oney, or whether he purchased it for the firm of Hugh
Cooper and S. J. Cooper, who were engaged in the saw mill
business. L. C. Giboney was asked whether he knew under

what name and where the defendants were doing business.
He stated that Hugh Cooper and Sam Cooper were doing
business on Nutter's Fork in the firm name of Cooper &
Cooper, in the saw mill business, and was asked if he had
business with them as the firm of Cooper and Cooper.   A.
"Not until I delivered the horses to them."   He was then
shown the note in question and asked "Who made that note?"
A.   "My son drew the note up—L. P. Giboney."   "Who
signed it?"   A.   "Sam Cooper."   "Where did he sign it?"
A.   "In a grocery that Mr. Cooper, Sam Cooper, was run-
ning," and stated that by Sam Cooper he meant S. J. Coop-
er.   He was told to look at the signature of the note and ex-
plain, if he could, how the "S. J." came to be crossed out.
A.   "Well he set down to the counter and put it S. J. Coop-
er.   Says I, 'Mr. Cooper, now is this the way you sign all
your paper?'   'We do,' he says, 'we sign all our papers in
this way.'   And I felt kind of doubtful about it; and this
Mr. Cooper's wife (pointing to Mr. Cooper who was present)
set right there (indicating,) and I set right there, and Mr.
Cooper set right there, indicating respective positions to each
other, and I parleyed a good bit in my mind whether to take
the note and leave the horses, or to take the horses, and he
told me so positively that was the way they signed their pa-
pers; and he said to me, 'We have part of the money in
the Cairo Bank now, but we don't want to draw all our means
out,' then I took the note.   Q.   What was the consideration
for that note?   A.   Three hundred dollars.   Q.   What did
you give for that?   A.   A pair of horses, wagon, harness
and outfit, chains and everything.   Q.   To whom did you sell
the wagon, harness, &c?   A.   Sam Cooper, I knowed him by
that name; that is the man who came and contracted for the
team.   Q.   For what purpose?   A.   To log the mill.   Q.   Do
you mean the saw mill of Cooper & Cooper?   A.   Yes sir.
Q.   Where?   A.   Right there at the mill.   Q.   But at the time
of making the note you would not accept his individual note?
A.   No sir, but when he signed it Cooper & Cooper—he first
signed it S. J. Cooper, and when I didn't want to take it, he
put & Cooper on it.   This Cooper's wife never said pro or
con, and the note laid there a good bit, and I thought she
couldn't help hearing what was said about this note and she
never gave any objections; but this Mr. Cooper didn't seem

to be there, and I asked Mr. Sam Cooper where he was, and he told me, but I don't recollect where he said he was. And I asked him very positively if that was the way they signed their paper, and he said they signed all their paper that way.

Question by Robinson: Which way do you mean, S. J. Cooper, or Cooper & Cooper? A. You see he only wrote S. J. Cooper, and then he put & Cooper and I objected to it. Q. Now, Mr. Giboney, when that note was signed under your objection, what, if anything, was done to the letters S. J.? Just look at the note? A. They were cancelled across.

Q. Did you see them crossed? A. I seen S. J. Cooper— I didn't see this one crossed (meaning the second letter,) but I did see this one. I took notice to that, and something called my attention and I turned my head, and when he handed me the note the S. J. was cancelled. Q. Did you pay the note when it was protested,—take it up out of the bank? A. No, sir; I didn't, my son did. Q. What is your son's name? A. L. P. Giboney. Q. He is the plaintiff in this suit? A. Yes sir."

There was a good deal of conflicting evidence about the erasure of the letters "S. J." as to whether it was done before or after it was negotiated and paid, or at the time it was made, and it seems to me this is not material. S. J. Cooper and W. H. Cooper were brothers doing business together as Cooper & Cooper in the saw mill business, and according to the evidence of Hugh Cooper, himself, S. J. Cooper was the most active member of the firm. He says that he and S. J. Cooper were members of the firm, and when asked "was there any limited powers upon either one of you as to the right to sign papers?" A. I believe not. Q. One had as much power as the other? A. Nothing was ever said about that as I know of. Q. You have the saw mill over there have you not? A. Yes, sir. Q. That belonged to the firm of Cooper & Cooper? A. Yes Sir. Q. You ran a bank account in the Bank of Cairo? A. Yes, sir; the business was all done in the name of Cooper & Cooper. Q. Who signed the checks? A. I done some of it. Q. Did S. J. Cooper ever do any of it? A. He has, I believe. Q. Any body else? A. Yes, my son Will. Q. You can not say that S. J. Cooper at the time had not the right to sign the name of Cooper & Cooper to that note? A. As a member of the firm

I suppose he had.    Q.   He brought the horses there to the mill?   A. No, sir; Mr. Giboney brought them to the mill.

The firm was carrying on the saw mill business, and the purchasing of this team was in the line of their business—"for logging the mill" and the team was used for that purpose as stated by the resident defendant, Hugh Cooper, as a witness for defendants, but claimed that he, S. J. Cooper, worked the team for the firm by the day and was so paid for it by the firm, that was a matter between themselves, however. S. J. Cooper, being an active member of the firm, having a right to make such purchase and to execute the pa.per of the firm in payment for the property, was reasonably taken by Giboney to be representing the firm in making the purchase, and there is no direct evidence of the fact that the plaintiff or his father, L. C. Giboney, had notice that S. J. Cooper was dealing for himself individually, and not for the firm, even if that were true. That was a question purely for the jury, which rendered its verdict for plaintiff, notwithstanding the instruction so favorable to the detendants given to it by the court. I am unable to see that the verdict of the jury should be disturbed. The judgment is therefore affirmed.

*Affirmed.*