STATE OF WEST VIRGINIA

*v.*

CATHERINE HATFIELD, *et al.*

(No. 10337)

Submitted September 26, 1951. Decided November 13, 1951.

*Justice & Justice* and *John J. Justice,* for appellants.

*William C. Marland,* Attorney General, *George W. Stokes,* Assistant Attorney General, for State.

*Scott, Ducker & Keadle, H. L. Ducker, Paul W. Mc-Creight,* for *Enoch L. Fillinger, Elizabeth Fillinger, Josie Chambers, Wallace Curry* and *Harry K. Curry.*

GIVEN, JUDGE:

The deputy commissioner of forfeited and delinquent lands of Mingo County, on July 16, 1948, instituted this proceeding for the purpose of having sold certain lands alleged to have been forfeited to the State for the non-payment of taxes. Included within the lands proceeded against were three tracts represented by the State Auditor's Certificates Nos. 800, 801 and 802. Tract No. 800 is described as containing 132.95 acres, minerals, tract No. 801 as containing 75.4 acres in fee, and tract No. 802 as containing 87.65 acres in fee, all situated on Guyan River, in Stafford District, Mingo County. By decree of January

25, 1949, the court ordered that the three tracts of land be sold, and the deputy commissioner, after having duly advertised the sale, on February 23, 1949, proceeded to sell the lands described in the proceeding mentioned, and lands described in other similar proceedings. The sale continued throughout the twenty-third, twenty-fourth and twenty-fifth of February, and the three tracts were sold to W. S. Thornton and Bennett Cline, on the third day of the sale. Before the sale was confirmed, however, two identical upset bids were received, one from Harry K. Curry and one from Troy Floyd, in amounts approximating the final bids of Thornton and Cline, plus ten per cent. Thereupon the court, without entering any order, directed that the three tracts of land be resold, and the second sale was had in open court, on May 23, 1949.

At the sale held in open court William Adair became the purchaser of the three tracts of land and, on June 8, 1949, the court confirmed the sale and directed the deputy commissioner to execute and deliver deeds to assignees of Adair. The deeds were duly executed and delivered on June 22, 1949. On July 30, 1949, Thornton and Cline, the purchasers at the first sale, filed their petition in the proceeding praying that the decree confirming the sale to Adair be set aside, that the deeds made to the assignees of Adair be decreed to be null and void, and that the sale made to Thornton and Cline be approved and confirmed. A hearing was had by the court upon the petition and, without entering any order, the court directed: "If the petitioners will file an upset bid of 10% more than the last bid received of $1,600.00, the sale will be reopened." On January 30, 1950, the last day fixed by the court for the receiving of such upset bid, an upset bid in the amount of $1,826.00 was received from Clara W. Justice, accompanied by her personal check for that amount. There is some contention to the effect that the bid was made by Clara W. Justice on behalf of Thornton and Cline. The court found and decreed, however, that "* * * Thornton and Cline, petitioners, did not, on the said 30th day of January, 1950, place a bid in the said amount with the

said Deputy Commissioner, but that a proposed bid was placed with the said Deputy Commissioner by Clara W. Justice, in the amount of One Thousand Eight Hundred Twenty-six Dollars ($1,826.00). And * * * that the said bid placed by the said Clara W. Justice, with the said Deputy Commissioner, is not the bid of the said Thornton and Cline, but is her own bid, * * *." We find no basis for disturbing this finding. By the same decree the court again affirmed the sale to Adair and dismissed the petition of Thornton and Cline. The last mentioned decree was entered on January 31, 1950, and it is from that decree that Thornton and Cline obtained this appeal.

The three tracts of land were sold to the State for the nonpayment of taxes for the year 1931 and, at the date of the entry of the decree of sale, the amount of taxes, interest and costs owing as to each tract was $911.57, $496.90 and $638.84, respectively. The amount of purchase money paid by Adair for each tract was $660.00, $500.00 and $500.00, respectively. The amount of the final bid for tract No. 800, by Thornton and Cline, at the first sale, was $102.00, and the amount of each of the upset bids received therefor, from Curry and Floyd, was $112.50. The amount of the final bid for tract No. 801, by Thornton and Cline, at the first sale, was $205.00, and the amount of each of the upset bids received therefor from Curry and Floyd was $225.50. The amount of the final bid for tract No. 802, by Thornton and Cline, at the first sale, was $202.00, and the amount of each of the upset bids received therefor, from Curry and Floyd, was $222.20.

The contentions made by appellants are included in the following propositions: (1) The applicable statute did not authorize the court to accept any upset bid; (2) upset bids should not have been received from Curry and Floyd, for the reason that they were present at the first sale; (3) that appellants had no formal notice of the receipt of the upset bids, or that the sale to them would be set aside, therefore no opportunity to be heard in the matter; and (4) that it was error to sell the three tracts "as a unit or whole", because it was "a deviation from the method

and manner prescribed by the law under which such sales are made."

Chapter 160, Section 14, of the Acts of the Legislature of 1947, now Code, 11A-4-14, reads: "Except as otherwise specifically provided in this article, all suits instituted under the provisions thereof shall in all respects be commenced, proceeded in, heard and determined in like manner as other suits in chancery." This act, effective before the institution of the instant proceeding, controls the procedure therein. *Shields* v. *Romine,* 122 W. Va. 639, 13 S. E. 2d 16. In this State the matter of receiving upset bids has always been left to the discretion of the trial court, the discretion being reviewable, and the rule favors the receiving of such bids upon reasonable showing that the original sale price was inadequate. In *State* v. *Murphy,* 109 W. Va. 102, 153 S. E. 149, Point 3, syllabus, the Court held: "Whether such sale be confirmed or the property again offered for sale depends in a great measure upon the circumstances of each particular case, and the decision of the chancellor thereon will not be disturbed by this court unless plainly wrong." See *Gillmor* v. *Rinehart,* 73 W. Va. 779, 81 S. E. 549; *Abney-Barnes Co.* v. *Coal Co.,* 89 W. Va. 504, 109 S. E. 616. The rule appears to be different in Virginia. See *Moore* v. *Triplett,* 96 Va. 603, 32 S. E. 50, 70 Am. St. Rep. 882; *Chandler* v. *Chandler,* 174 Va. 95, 5 S. E. 2d 523. An upset bid, in the amount of ten per cent above the sale price, in some circumstances will constitute a sufficient showing to warrant the trial court in directing a resale of the property, especially where there has been no previous resale ordered. *Kable* v. *Mitchell,* 9 W. Va. 492. There is no authority, however, and in reason should be none, requiring a reopening of the bidding merely upon the receipt of an upset bid of ten per cent above the previous purchase price. In some circumstances a ten per cent increase, or even a greater increase, would not require the reopening of the bidding. In the instant matter we do not find that the trial court abused its discretion in directing the resale upon receiving the bids of Curry and Floyd.

We also hold that there is no merit in the contention of appellants that the upset bids should have been refused, for the reason that Curry and Floyd were present at the time of the sale to appellants. There may be some question as to whether Curry and Floyd were actually present on the third day of the sale, when the three tracts of land were sold to Thornton and Cline, but, assuming that they were present, that fact would not necesarily prevent the court, in its wide discretion, from reopening the bidding. The trial court should, of course, exercise extreme caution in considering upset bids received from persons who were present and participated in the bidding at the previous sale, with a view toward preventing any abuse of the practice of receiving upset bids, or in any way delaying the progress of the litigation. We observe, in the instant matter, no such improper motive.

Appellants complain that no formal notice was given them as to receipt of the upset bids of Curry and Floyd, or as to the time of resale of the property, and that they were therefore denied the right to be heard as to the reopening of the bidding. The sale to the appellants had not been confirmed by the court at the time of the receipt of the upset bids. In *Eakin* v. *Eakin*, 83 W. Va. 512, 98 S. E. 608, Points 6 and 7 of the syllabus, the Court held:

"6. There is a wide difference between the court's power of control over a sale before and after confirmation."

"7. Before confirmation the rights of the purchaser are inchoate, and upon a showing of inadequacy of price, or upon an offer of a higher bid, properly secured, it is discretionary with the court whether it will confirm the sale or set it aside and direct a resale. The exercise of this discretion depends in large measure upon the facts of each case, abuse thereof when effecting inequities being subject to review by the appellate court."

In the opinion in the last mentioned case, at Page 519, West Virginia Reports, the Court stated: "There is a wide difference between the court's power of control over a

sale before and after confirmation. *Trimble* v. *Herold,* 20 W. Va. 602, 612; *Coles* v. *Coles,* 83 Va. 525; *Todd* v. *Gallego Mfg. Co.,* 84 Va. 586; *Insurance Co.* v. *Cottrell,* 85 Va. 857. A bid, though accepted by the commissioner conducting the sale, does not become a contract until reported to and confirmed by the court. Up to that time it is merely an offer to buy, but as an offer it becomes binding upon the bidder when accepted and confirmed by the court, and may be enforced against him. *Stout* v. *Philippi M. & M. Co.,* 41 W. Va. 339; *Lowman* v. *Funkhouser,* 78 W. Va. 742; *Richardson* v. *Jones,* 106 Va. 540. Until then the right of the purchaser is inchoate; the sale is an incomplete bargain, merely an offer which the court may or may not accept as circumstances and conditions may require. That is the stage at which the court may open anew the bidding upon an advanced offer, substantial and made in good faith. But even at this stage it is always discretionary with a court whether it will confirm a sale, though made and complied with in all respects as required by its decree, or set it aside and direct a resale. Whether a court will confirm must depend in great measure on the circumstances in each case, abuse of the discretion when effecting inequities being subject to review by the appellate court. * * *." See *Kable* v. *Mitchell,* 9 W. Va. 492; *Hughes & Co.* v. *Hamilton,* 19 W. Va. 366; *Connell* v. *Wilhelm,* 36 W. Va. 598, 15 S. E. 245; *Klapneck and White* v. *Keltz,* 50 W. Va. 331, 40 S. E. 570; *Thomas* v. *Thomas,* 105 W. Va. 563, 143 S. E. 759. Whether appellants had formal notice is not material, however, for they had actual knowledge of the receipt of the upset bids, were present in court at the time of the resale, actively entered into the bidding, and made no objection as to any matter relating to that procedure until after the confirmation of sale. In these circumstances they can not now be heard to complain. See *Giboney* v. *Cooper,* 57 W. Va. 74, 49 S. E. 939; *Franklin* v. *Lumber Co.,* 66 W. Va. 164, 66 S. E. 225; 66 C. J. S., Notice, §3.

The last point of error assigned is that it was error to make sale of the three tracts "* * * as a unit or whole, to

the said William Adair, for the reason that such a sale was a deviation from the method and manner of sale provided for by the law, which must be strictly construed." The deputy commissioner testified that he announced in open court, at the beginning of the resale: "* * * for convenience since the tracts were contiguous and adjoining each other, if there was no objection on the part of persons present, I would offer them for sale as a whole." The record shows no objection to the suggested procedure, but it is not clear just how the property was sold, since the order confirming the sales to Adair shows that tract No. 800 was sold to him for $660.00; tract No. 801 for $500.00; and tract No. 802 for $500.00. It is not unusual, in chancery proceedings, for trial courts to direct or authorize sale of contiguous tracts as a unit. Often that procedure may prove advantageous to all interested parties in obtaining greater value for the property. We see no reason why that procedure should not be followed in proper circumstances, in proceedings brought on behalf of the State by the deputy commissioner of forfeited and delinquent lands, so long as the interests of former owners as to any excess of the purchase price, over and above the taxes, costs and interest, are protected. No such question is involved here and appellants, having no interest either in the land or in any such excess, are not prejudiced and can not be heard to complain.

Finding no error, the decree of the Circuit Court of Mingo County complained of is affirmed.

*Affirmed.*