517 S.E.2d 494

**Gerald Locke SMITH, Petitioner Below, Appellee,**

v.

**Betty M. RUSMISELL, Respondent Below, Appellee,**

**Mike Ross, Inc., a West Virginia Corporation, Appellant.**

No. 25429.

Supreme Court of Appeals of West Virginia.

Submitted April 14, 1999.

Decided July 14, 1999.

Dissenting Opinion of Justice Davis July 20, 1999.

---

John E. Busch, Esq., Busch & Talbott, Elkins, West Virginia, Attorney for Smith.

W.T. Weber, Jr., Esq., W.T. Weber, III, Esq., Weber & Weber, Weston, West Virginia, Attorney for Mike Ross, Inc.

Ann Rusmisell, Pro Se, Attorney in fact for Betty M. Rusmisell.

MAYNARD, Justice:

This case is before this Court upon appeal of a final order of the Circuit Court of Upshur County entered on May 6, 1998. In that order, the circuit court ruled that a $375,000.00 bid for property sold at a partition sale was "grossly inadequate" and ordered the tracts of land to be resold. In this appeal, the appellant, Mike Ross, Inc. (hereinafter "Ross"), requests that the final order of the circuit court be reversed and the property conveyed pursuant to the bid of $375,000.00. Ross contends that the evidence presented during the confirmation hearing established that its bid was not "grossly inadequate."

This Court has before it the petition for appeal, the designated record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is reversed.

### I.

This case arises out of a suit to partition filed in the Circuit Court of Upshur County by Gerald Locke Smith (hereinafter "Smith") on December 12, 1996. Smith and Betty Rusmisell (hereinafter "Rusmisell") each owned a one-half interest in 16 parcels of land located in the Buckhannon Corporation and Buckhannon District of Upshur County. Smith's petition alleged that "due to the nature, character and amount of the said real estate," it could not be conveniently or equitably partitioned. Smith requested the court to order a sale of the real estate and division of the proceeds among the owners. Alternatively, Smith requested that he be allotted the property upon payment to Rusmisell for her one-half share.

On March 26, 1997, the circuit court appointed three commissioners to independently determine the susceptibility of the property for partition and to make a recommendation to the court. On August 25, 1997, the commissioners filed a report indicating the sixteen parcels of land could not be equitably divided and could only be partitioned by sale. Rusmisell objected to the sale of the property and filed exceptions and affidavits in opposition to the commissioners' report.

At a hearing in September 1997, the circuit court considered Rusmisell's objections to the sale of the property. However, ultimately, the circuit court determined that the property should be sold. John E. Busch was appointed Special Commissioner to hold the public sale.

Subsequently, Rusmisell attempted to prevent the sale by filing an appeal with this Court. After the appeal was refused, the Special Commissioner scheduled the public sale for March 6, 1998, and posted the appropriate notices. One day prior to the sale, Rusmisell filed a civil action in the United States District Court for the Northern District of West Virginia styled *Rusmisell v. Smith, et al.*

On the day of the sale, Ann Rusmisell, Betty Rusmisell's daughter,[1] distributed cop-

---

1. Ann Rusmisell acted on behalf of her mother throughout these proceedings. She presented the circuit court with documents showing that

her mother had given her a power of attorney. In addition, Ann Rusmisell asserted that she should be made a party to the suit because of her

ies of the complaint filed in federal court to those persons attending the sale. She claimed that the sale was illegal and threatened potential bidders that they would be joined as a party in the lawsuit should they attempt to purchase the property. Eventually, Ann Rusmisell was removed from the sale by members of the Upshur County Sheriff's Department and the sale proceeded as scheduled with several people bidding on the various parcels.

This appeal concerns only the bids that were tendered for tracts eight and nine, known as the Ridgeway property. The highest bid for this property was made by James Ross, president of Ross, in the amount of $375,000.00. A few days after the public sale, Jeffrey St. Clair (hereinafter "St. Clair"), tendered an upset bid on the Ridgeway property in the amount of $412,500.00. St. Clair had been present at the public sale, but stated that he was intimidated by the actions of Ann Rusmisell and was afraid to bid on the property.[2]

On April 29, 1998, the circuit court conducted a hearing to confirm the public sale. At the hearing, St. Clair presented evidence in support of his upset bid for the Ridgeway property. He offered the testimony of Steven Holmes, a qualified real estate appraiser, who valued the Ridgeway property at $675,000.00. In response, Ross offered the appraisal of the Upshur County Assessor which indicated that the value of the property was $246,700.00. Ross also presented the testimony of Hugh Hefner, a professional geologist, who testified that the value of oil and gas under the Ridgeway property was $49,690.00. Dale and James Woody, local timber operators, testified that the value of these specific tracts of land including the timber was between $350,000.00 and $400,000.00.

Thereafter, the trial court found Ross's bid of $375,000.00 "grossly inadequate," based on the evidence and "the Court's personal knowledge of the property in question." The trial court ordered that the sale be set aside

and the Ridgeway property be resold by the Special Commissioner. This appeal followed.

## II.

Ross contends that its bid of $375,000.00 was not "grossly inadequate," but instead was supported by the evidence presented at the confirmation hearing. In particular, Ross relies upon the Upshur County Assessor's appraised value of the tracts of land at $246,700.00 and the expert opinion of geologist Hugh Hefner valuing the oil and gas reserves of the property at $49,690.00. Ross also maintains that the testimony of James and Dale Woody, indicating the property had a total value of between $375,000.00 and $400,000.00, supports his bid. Ross further asserts that the circuit court's use of its own personal knowledge in finding that its bid was inadequate was an abuse of discretion because it had no way to counter the court's own opinion of value which was not based on any evidence presented during the hearing.

This case requires us to take another look at our law dealing with judicial sales and in particular, upset bids. In Syllabus Points 7 and 8 of *Eakin v. Eakin*, 83 W.Va. 512, 98 S.E. 608 (1919), this Court said:

> Before confirmation the rights of the purchaser are inchoate, and upon a showing of inadequacy of price, or upon an offer of a higher bid, properly secured, it is discretionary with the court whether it will confirm the sale or set it aside and direct a resale. The exercise of this discretion depends in large measure upon the facts of each case, abuse thereof when effecting inequities being subject to review by the appellate court.

> Upon the confirmation of a judicial sale the rights of the purchaser become vested. Thereafter nothing except fraud, accident, mistake, or some other cause for which equity would avoid a like sale between private parties, will warrant a court in avoiding the sale or in opening it for other

---

own interest in the property. However, it appears that she was never permitted to intervene as a named party.

**2.** At the confirmation hearing, the circuit court found that the conduct of Ann Rusmisell was

sufficient to justify her removal from the sale, but that her disruption was not sufficient to taint the sale. Thus, the circuit court's sole reason for refusing to confirm the bid made at the judicial sale by Ross was inadequacy of price.

bids. Mere inadequacy of price or tender of a higher bid will not suffice, unless they themselves clearly import fraud, or are accompanied by other facts or circumstances constituting good causes such as are above stated.

■ In other words, historically, in West Virginia, the matter of receiving upset bids has been left to the discretion of the trial court. *State v. Hatfield,* 136 W.Va. 342, 346, 67 S.E.2d 529, 531 (1951). We therefore hold that prior to confirmation, the decision whether to set aside a judicial sale and accept an upset bid is within the discretion of the circuit court. We have said, " 'Whether a sale of land shall be confirmed or the property again offered for sale, upon the filing of an upset bid, depends upon circumstances of the particular case, and the action of the trial court thereon will not be disturbed on appeal unless plainly wrong.' Syllabus Point 2, *State v. Hatfield,* 136 W.Va. 342, 67 S.E.2d 529 (1951)." Syllabus Point 1, *Old Nat'l Bank of Martinsburg v. Hendricks,* 181 W.Va. 537, 383 S.E.2d 502 (1989).

Generally, courts have adopted one of three legal doctrines to determine the effect of an upset bid offered for property after it has been sold at a judicial sale but before the sale has been confirmed. 47 Am.Jur.2d *Judicial Sales* § 308 (1995). Some jurisdictions used to follow the "English doctrine" whereby the mere receipt of a substantially higher bid than that offered at the judicial sale was sufficient reason to refuse confirmation of the sale and reopen the bidding. This doctrine has generally been abolished, but some jurisdictions still follow a modified form of the rule. *Id.*[3] Other jurisdictions have adopted the opposite approach of the "English doc-

trine" whereby the fact that a higher bid has been offered is not alone a sufficient reason to support a refusal to confirm the sale.[4] Still, other jurisdictions, like West Virginia, leave the matter to the discretion of the trial court.[5] Regardless of the approach adopted, it is virtually impossible to find any well-defined rule in any one jurisdiction. 47 Am. Jur.2d *Judicial Sales* § 308 (1995). This fact is easily illustrated by our own case law on this subject.

■ Although West Virginia has ostensibly adopted the approach of leaving the matter to the discretion of the trial court, this Court has cautioned that " ' "[a] sale of real estate by a trustee will not be set aside upon the ground of inadequacy of price unless such inadequacy is so great as to shock the conscience of the chancellor...." Syllabus Point 9, in part, *Pence v. Jamison,* 80 W.Va. 761, 94 S.E. 383 (1917). Syllabus Point 3, in part, *Rife v. Woolfolk,* [169] W.Va. [660], 289 S.E.2d 220 (1982).' Syllabus, *Tudor v. Tudor,* 171 W.Va. 135, 298 S.E.2d 108 (1982)." Syllabus Point 2, *Benavides v. Shenandoah Fed. Sav. Bank,* 189 W.Va. 590, 433 S.E.2d 528 (1993). As we explained in *Koay v. Koay,* 178 W.Va. 280, 283, 359 S.E.2d 113, 116 (1987):

A partition sale is a forced sale, and for that reason courts have been hesitant to find that a bid substantially below an appraised value or an arm's length transaction value is so grossly inadequate to shock the conscience. Bids often amounting to only 50% or less of the appraised or arm's length value have been upheld.

In addition, we have stated that "[t]here is no authority ... requiring a reopening of the

3. See also 71 A.L.R. 667 (1930); *Dunn v. Silk,* 155 Va. 504, 155 S.E. 694 (1930) (inadequacy of price alone will not support an upset bid unless it affirmatively appears that the inadequacy was gross).

4. See *Shipe v. Consumers' Service Co.,* 29 F.2d 321 (7th Cir.1928), *cert. denied by Tudor v. Schindler,* 279 U.S. 850, 49 S.Ct. 347, 73 L.Ed. 993 (1929) (court must confirm first judicial sale absent good reason for refusal such as chilling of bids, other misconduct, or gross inadequacy of price); *Hinton v. Elliott,* 187 Ark. 907, 63 S.W.2d 633 (1933) (inadequacy of price and fact that property will bring more upon resale will not

justify court's refusal to confirm commissioner's sale); *Sterling Grace Mun. Sec. Corp. v. Central Bank & Trust Co.,* 926 S.W.2d 670 (Ky.Ct.App. 1995) (mere inadequacy of price is an insufficient ground for setting aside a judicial sale).

5. See *Ryerson v. Apland,* 378 Ill. 472, 38 N.E.2d 712 (1941) (chancellor possesses broad discretion in approving or disapproving partition sale and his decision will not be disturbed upon appeal unless there is a clear abuse of discretion); *Hull v. Hull,* 183 Neb. 773, 164 N.W.2d 455 (1969) (confirmation of judicial sales is left to discretion of trial court).

bidding merely upon the receipt of an upset bid of ten per cent above the previous purchase price." *Hatfield,* 136 W.Va. at 346, 67 S.E.2d at 531. We have also advised that

> The trial court should, of course, exercise extreme caution in considering upset bids received from persons who were present and participated in the bidding at the previous sale, with a view toward preventing any abuse of the practice of receiving upset bids, or in any way delaying the progress of the litigation.

*Id.* at 347, 67 S.E.2d at 532.

■ Obviously, our prior holdings require the trial court to act fairly and with due regard to the rights of all involved in the sale. Perhaps, the trial court's role was best summarized in *Glaser v. Weinberger,* 188 Neb. 205, 196 N.W.2d 113 (1972):

> In determining whether to accept or reject an upset bid, the court must elect between two conflicting duties. Ordinarily it must strive to obtain the best price possible for the property sold, especially where the interests of minors are involved. On the other hand, when the sale is free of fraud and an adequate price has been realized, consideration must be given to the rights of the purchaser and the stability of judicial sales. This was well phrased when the court stated in *Rupe v. Oldenburg,* [184 Neb. 229, 232, 166 N.W.2d 417, 420 (1969)]: 'The rights of the highest bidder at the judicial sale whose bid has been accepted ought not to be lightly disregarded. It is true, of course, that such bid is subject to confirmation by the court. If upset bids were permitted and accepted under all circumstances, the holding of a judicial sale would be nothing more than preliminary bidding and not a method of purchasing the land. Such a practice would chill the bidding at the judicial sale by encouraging the filing of upset bids and render the judicial sale a mere formality and the elimination of the primary purpose of judicial sales. This is most harmful to the stability and true purpose of judicial sales which trial courts should not lightly disregard.'

■ In the case *sub judice,* the trial court found that the bid made by Ross was "grossly inadequate." The trial court's final order states:

> This Court observes, as a matter of fact and law, based upon the testimony presented, and the Court's own knowledge of the properties in question, that certain of the properties offered for sale received high bids that were grossly inadequate. The Court heard the testimony of Steven Holmes, a qualified real estate appraiser, that the market value of tracts eighth and ninth, including timber and minerals, was Six Hundred Seventy-five Thousand Dollars ($675,000.00) and the Court finds a bid of Three-Hundred Seventy-five Thousand Dollars ($375,000.00) by Mike Ross, Inc. is grossly inadequate[.]

First, we must state that we are somewhat concerned by the trial court's use of its own personal knowledge in determining whether the bid tendered by Ross at the public sale was inadequate.

> While courts are permitted to take judicial notice of certain facts, it is well settled that a trial judge is not permitted to base a finding upon facts which are merely matters of his personal knowledge as distinguished from proof of such facts.... 'Judicial knowledge is limited to what a judge may properly know in his judicial capacity, and he is not authorized to make his individual knowledge of a fact not generally or professionally known the basis of his action.' 31 C.J.S. Evidence § 11, page 832. See also 23 C.J., Evidence, Section 5, pages 61–62.

*Boggs v. Settle,* 150 W.Va. 330, 338, 145 S.E.2d 446, 451 (1965). When a court resorts to its own personal knowledge to reach a decision on a particular issue, no matter how accurate or useful the court's knowledge is, the party against whom the decision is rendered is effectively denied any opportunity to test or challenge the court's knowledge and is accordingly denied the right of cross-examination.

Notwithstanding the trial court's use of its own personal knowledge in rendering a decision in this case, there was no finding set forth in the final order that the bid made by Ross shocked the conscience of the court.

Reviewing the evidence presented during the confirmation hearing, it appears that both parties introduced evidence to support their positions. While St. Clair offered the testimony of Steven Holmes indicating that the property was worth $675,000.00, Ross showed that the Upshur County's Assessor's office appraised the property at $246,700.00. In addition, Ross offered testimony that the minerals under the property were worth $49,690.00 and that the property including the minerals was worth $350,000.00 to $400,000.00.

Based on this evidence, we believe that the circuit court erred by finding that Ross's bid was "grossly inadequate." As we previously noted, proceeds of less than 50% of the appraised or actual value received at a partition sale have been upheld. *Koay*, 178 W.Va. at 283, 359 S.E.2d at 116. In *Koay*, we upheld a $241,926.00 bid for 19 parcels of land which had been appraised at $336,900.00 by the partition commissioners and at $511,000.00 during a divorce proceeding. Similarly, in *Benavides, supra*, we upheld a $65,000.00 bid for a home valued at $136,500.00. In this case, the high bid made at the public sale was actually more than the appraised value of the property according to the assessor's office and was 55% of the market value according to Steven Holmes, the real estate appraiser who testified on behalf of St. Clair. Accordingly, we find that the circuit court erred by refusing to confirm the public sale and ordering that the tracts be resold.

 We further note that after reviewing our law on partition sales and upset bids, we believe that our trial courts should continue to exercise discretion in determining the effect of an upset bid for property that has been sold at a public sale. However, we also believe that unless the sale price is so inadequate as to shock the conscience of the court or unless some sort of defect is shown with regard to the manner in which the sale was conducted, the bid tendered at the public sale should be confirmed. Therefore, we hold that a judicial sale regularly made in the manner prescribed by law, upon due notice, and without fraud, unfairness, surprise, or mistake, should not be set aside or refused confirmation based on mere inadequacy of price, unless the price is so inadequate as to shock the conscience of the court and raise a presumption of fraud, unfairness, or mistake. We further hold that the burden of showing that a bid made at a judicial sale is inadequate rests upon the party who tenders an upset bid.

Thus, for the reasons set forth above, we reverse the final order of the Circuit Court of Upshur County entered on May 6, 1998, and remand this case to the circuit court for confirmation of the $375,000.00 bid by Ross for tracts eight and nine, known as the Ridgeway property. The circuit court should further direct the Special Commissioner to convey tracts eight and nine to Ross by apt and proper deed.

Reversed and remanded.

DAVIS, Justice, dissenting:

(Filed July 20, 1999)

Judge Keadle did not abuse his discretion in ordering the property resold based upon a bid which was "grossly inadequate." That has been our law for more than one hundred years. In *Kable v. Mitchell*, 9 W.Va. 492 (1876), *overruled in part by Childs v. Hurd*, 25 W.Va. 530 (1885), this Court stated:

> The court may, in the exercise of a sound discretion, either affirm, or set aside, the sale, where from the facts, evidence, and circumstances before it, it appears clearly that the sale was made at a greatly inadequate price, and the court may solve the question upon affidavits, or depositions in connection with the fact that a greatly larger price is offered to the court for the land, and, secured or offered to be secured, or, it may set the sale aside upon any evidence, or fact, or facts before it, which clearly shows that the land sold at a greatly inadequate price.

Syl. pt. 3, 9 W.Va. 492.

This Court held further in *Kable* that "[w]here the circuit court has disapproved, and set aside, sale made by its own commissioners, the Appellate Court should not disturb the action of the circuit court, unless, it plainly appears that there is error to the prejudice of the appellant." Syl. pt. 8, *id.*

In this case, Ross was not prejudiced by the judge's decision. Ross merely made an offer to purchase the property subject to court approval. *See State v. Hatfield,* 136 W.Va. 342, 346, 67 S.E.2d 529, 532 (1951). Ross' bid represented less than fifty-six percent of the Holmes' appraised value. The trial court, in exercising its discretion, considered the difference between Holmes' appraisal and the high bid at the auction, which was $300,000.00. By any standard, a bid falling more than a quarter of a million dollars short of market value is grossly inadequate. Accepting such a bid would be an inequity to both Smith and Rusmisell.

It is within the sound discretion of the trial court to approve or reject a bid made at a judicial sale. There is sufficient independent evidence that the Ross bid was grossly inadequate. Judge Keadle did not abuse his discretion when he refused the Ross bid and ordered the property be re-offered for sale. Therefore, I respectfully, dissent.