### Richmond.

NITRO-PHOSPHATE SYNDICATE, LIMITED, OF LONDON, AND AN-
OTHER v. JOHNSON.

December 11, 1902.

1. JUDICIAL SALES—*Effect of Confirmation.*—After a judicial sale has
been absolutely confirmed by the court which ordered it, it will not
be set aside except for fraud, mistake, surprise, or other cause for
which equity would give like relief if the sale had been made by the
parties in interest, instead of by the court.
2. JUDICIAL SALES—*Fair Price—Criterion of Value—Highest Bid—Subse-
quent Affidavits of Under-Value.*—The highest bid made at an open
judicial sale, fairly conducted, after full notice, in the face of such
competition as can be attracted, is a fair and just criterion of the
value of the property at that time. After-stated opinions, affidavits
of under-value, and the like, are regarded with little favor, and are
entitled to little weight in comparison with the fact established by
the auction and its results.
3. JUDICIAL SALES—*Stifling Bidding—Refusing Advance Before Confirma-
tion—Case at Bar.*—For reasons of public policy contracts which
tend to lessen competition and restrain bidding at judicial sales,
are, as a general rule, held to be illegal, but the burden is upon the
party alleging such a contract to prove it by clear and satisfactory
evidence. An offer to buy at an advance from a purchaser at a
judicial sale, before confirmation, which the purchaser declines to
accept for lack of interest in the property, or power to sell, in no
wise infringes upon this general rule. In the case in judgment, the
evidence fails to establish any fraud, impropriety, or illegality on
the part of the purchaser.

'Appeal from a decree of the Circuit Court of the city of
Norfolk, pronounced June 5, 1900, in a suit in chancery under
the style of *Industrial and General Trust, Limited, of London,*

*England, and Others* v. *Nitro-Phosphate Syndicate, Limited, of London, England, and Others.*

*Affirmed.*

The opinion states the case.

*Leake & Carter* and *W. E. Bibb,* for the appellants.

*Starke & Starke* and *W. W. Old & Son,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This attachment proceeding in equity was instituted by the Industrial and General Trust, Limited, of London, England, a corporation created under the laws of Great Britain, against the Nitro-Phosphate Syndicate, of London, England, another corporation created under the laws of Great Britain, to foreclose a mortgage in favor of the plaintiff upon certain properties, among others, a tract of land in the county of Norfolk, Va.

After full advertisement of the property for eight consecutive weeks, the land in controversy, in Norfolk county, was sold at public auction on April 2, 1896, to the appellee, Mrs. Jessie C. Johnson, of Baltimore, Md., at the price of $37,000; her husband, Greenleaf Johnson, having made the bid for her. When this sale was reported to the court for confirmation, Messrs. Neely, Seldner & Warrington, attorneys, appeared for the debtor company, and for Boyd M. Smith, the sole representative and general manager of that company in this country, who was, by appointment of the court, acting as receiver of the property pending a sale, and filed exceptions to the report of sale. After some days given the exceptants in which to obtain an upset bid, the court received from Messrs. Neely, Seldner & Warrington, their attorneys, the following communication:

"*To Honorable Robert R. Prentis, Judge of Circuit Court of Norfolk County:*

"*Dear Sir,—In lieu of a personal appearance, we beg to in-*

*form the court that, so far as we are informed, an effort to obtain
an upset bid in the Nitro-Phosphate case has failed to secure
such bid.*"

Thereupon, on the 28th day of May, 1896, the exceptions
were overruled, the sale to the appellee confirmed, and the same
special commissioners directed to collect the purchase money,
pay the same over to the parties entitled thereto, and to execute
and deliver to the purchaser a deed of conveyance for the prop-
erty. Mrs. Johnson paid the whole of her purchase money in
cash, and a report was made in due time by the commissioners,
supported by proper vouchers, showing that the fund had been
disbursed, and all the requirements of the decree of May 28
carried out. This report was confirmed by decree of November
11, 1896, which ended the cause and directed that it be stricken
from the docket. Subsequently, at the same term of the court,
on motion of Boyd M. Smith, in his own right and as receiver, so
much of the decree as removed the cause from the docket was
set aside, and upon his further motion he was made a party
plaintiff, and the cause retained on the docket at his cost with
leave given him to file a petition within sixty days.

The foundation of the present litigation is a petition filed by
the appellant, the Nitro-Phosphate Syndicate, Limited, in which
it asks that the sale to the appellee, Jessie C. Johnson, be set
aside, upon the ground that she had bought the property at an
inadequate price, and procured a confirmation of the sale by
fraud. To this petition appellee filed an answer, denying that
the sale had been in any respect unfair, or that she had been
guilty of fraud in obtaining a confirmation of the sale to herself.
An answer to the same effect was filed by Greenleaf Johnson, the
husband of appellee, who had been made a party.

The sale was made by the learned counsel, acting as commis-
sioners, who represented the parties most vitally interested in
the result, after an unusually extensive and expensive advertise-

ment of the time, place, and terms of sale, and appears to have been in all respects conducted with perfect propriety and fairness to all concerned.

In *Berlin* v. *Melhorn*, 75 Va. 639, Judge Burks says that "it may be safely laid down, as a general rule, deducible from the authorities, that after a judicial sale has been absolutely confirmed by the court which ordered it, it will not be set aside except for fraud, mistake, surprise, or other cause for which equity would give like relief, if the sale had been made by the parties in interest, instead of by the court. ` But where the objection is to the confirmation, the rule is more liberal."

In the light of this well-established doctrine, we might, without further consideration, dismiss the subject of the alleged inadequacy of price, for it will hardly be contended that if this sale had been effected between the parties hereto, that a court of equity would, at the instance of the vendor, set the sale aside upon the ground that the price paid was inadequate. It may, however, be added that after full notice, an open sale fairly conducted, in the face of such competition as can be attracted, the highest bid which is made is a fair and just criterion of the value of the property at that time; and so, after stated opinions, affidavits of under value, &c., are regarded with but little favor, and estimated as of little weight, in the presence of the fact established by the auction and its results. *Todd* v. *Gallego Mills*, 84 Va. 586-591.

In support of the charge that the appellee secured the confirmation of the sale by fraud, the appellants have called two witnesses, Boyd M. Smith and Jessie C. Johnson, the appellee. The substance of Smith's testimony is that on the 25th of May, while the court was holding the report of sale open for him to put in an upset bid, he started for Philadelphia to obtain from friends there the ten *per cent.* advance required by the court; that he stopped *en route* in Baltimore, and had an interview with the appellee and her husband; that he told her of his purpose to

put in an upset bid; that he had friends who would furnish the money, but that he was advised by his counsel that it would only cause additional expense and delay, and that the property might be run up by other bidders to a much higher price than it had been already sold for; that for these reasons he was willing to give her the benefit of the ten *per cent.* bid; that she could have the property confirmed to her at the $37,000 she had bid, upon the terms that she would then convey it to him in consideration of $40,000, of which $5,000 was to be paid in six months, and the remaining $35,000 secured by mortgage on the property at five or ten years.  He admits that the husband of appellee refused to reduce this alleged agreement to writing, but states that appellee, with approval of her husband, accepted his proposition, which caused him to withhold the upset bid that was to be secured through his friends, and allow the property to be confirmed to her.  This witness admits on cross-examination that he made this alleged agreement with Mrs. Johnson for his individual benefit, and not in the interest of the debtor company represented by him, and that he did not abandon this expectation of profit, for himself alone, until advised that he occupied a trust relation to the Nitro-Phosphate Syndicate, Limited, and could not claim the benefit of the contract for himself.  For this reason the present proceeding was inaugurated in the name of the Nitro-Phosphate Syndicate, Limited, and subsequently united in by its creditor, the Industrial and General Trust, Limited, claiming that it was entitled to anything that might be realized, to the extent necessary to satisfy a large balance due on its debt, after applying the proceeds of sale made.

Mrs. Jessie C. Johnson, the appellee, was called by the appellants and subjected, as an adverse witness, to a prolonged and searching cross-examination.  The result of her evidence is a flat denial of the statements of the witness Smith with respect to the agreement he claims to have had with her.  She admits the fact

of the visit to her house, and that Smith submitted some proposition looking to a purchase of the property from her, but declares that she declined positively to accept or to consider his proposition; that she told him the property was in the hands of the court; that the title was in the court; that she did not desire to sell the property, and could not sell property to which she had no title; that she would not sell to him or anyone else; that in this position her husband, who was present, concurred, and that Smith left that day, as he said, for Philadelphia; and that she had never heard from him, or seen him from that day until the morning she testified in this case. This emphatic and flat denial by the witness of the alleged agreement, relied on as showing fraud, is consistently maintained and unshaken by a rigid and searching cross-examination covering sixteen pages of printed matter, and running into 128 questions.

In *Camp* v. *Bruce*, 96 Va. 521, Judge Buchanan, speaking for this court, after pointing out that the law refuses to enforce illegal contracts, as a rule, not out of regard for the party objecting, nor from any wish to protect his interests, but from reasons of public policy, says: "We have no statute declaring that contracts like the one under consideration are unlawful, yet, under the principles of the common law, any contract that is made for the purpose of, or whose necessary effect or tendency is to lessen competition and restrain bidding at judicial sales, is held to be illegal because opposed to public policy. The object in all such sales is to get the best price that can be fairly had for the property. The policy of the law, therefore, is to secure such sale from every kind of improper influence. To allow one bidder to buy off another, which is but a species of bribery, and thus prevent the property from bringing the best price, is condemned by the law, and the courts will not enforce contracts founded in such practices."

These wise and salutary views are as sound now as when they were first uttered, and the doctrine enunciated will be enforced

in every case to which it is applicable. In the case at bar, however, the burden was upon the appellants to establish clearly and satisfactorily the fraud with which the appellee was charged. Instead, however, of establishing that the appellee had entered into an agreement with Boyd M. Smith with respect to the property by which she was to reap a profit, and he was prevented from putting in an upset bid, the decided preponderance of the evidence shows that Boyd M. Smith sought the appellee, and made to her an illegal proposition which she promptly and emphatically repudiated and refused to accept. There is nothing to show that the appellee has done any act to cast the slightest suspicion upon the propriety of her conduct as a bidder and purchaser of the property in question.

We are, therefore, of opinion that the decree appealed from dismissing the petitions filed by appellants, and striking the cause from the docket, is plainly right, and must be affirmed.

*Affirmed.*