## Richmond.

BENET AND ANOTHER V. FORD· AND OTHERS.

March 21, 1912.

1. JUDICIAL SALES—*Private Sales.*—The controlling purpose and prime object in making a judicial sale is to realize the best price obtainable for the property offered, and where a public sale, after due advertisement, has been attempted, and proved ineffectual in obtaining a satisfactory offer, there is no reason why the court may not, through its officers, negotiate a private sale, especially where the property is seriously depreciating in value and yielding no income comparable to the costs and expenses necessarily incident to its preservation and protection.

2. JUDICIAL SALES—*Inadequacy of Price—Exception—Burden of Proof.*— When the action of the court in confirming the sale of property under its control is complained of because of the inadequacy of the price, the burden is on the complaining party to show that he has been injured.

3. JUDICIAL SALES—*Inadequacy of Price—Fraud.*—If the grounds relied on for setting aside a judicial sale go to the very substance of the contract, such as fraud, accident, mistake, or misconduct on the part of the purchaser or other person connected with the sale, which has worked injustice to the party complaining, the rule governing in determining whether or not the sale shall be confirmed is very different from the rule controlling where the question is whether the price at which the property sold is entirely inadequate.

4. JUDICIAL SALES—*Inadequacy of Price—Affidavits.*—The highest bid made at an open judicial sale, fairly conducted, after full notice, in the face of such competition as can be attracted, is a fair and just criterion of the value of the property at that time. After-stated opinions, affidavits of under-value, and the like, are regarded with little favor, and are entitled to little weight in comparison with the fact established by the auction and its results.

Appeal from a decree of the Chancery Court of the city of Richmond in four chancery suits heard together. From a decree confirming a judicial sale, two of the parties in interest appeal.

*Affirmed.*

The opinion states the case.

*R. E. Byrd,* for the appellants.

*David Meade White, McGuire, Riley & Bryan, H. R. Pollard,* and *Robert H. Talley,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The litigation out of which this appeal arises has been of long standing, and conducted in four separate suits in equity, involving the rights and interest of various parties in what is spoken of in the record as the "A. J. Ford Trust Estate," including the "Ford's Hotel" property, situated at the southeast corner of Broad and Eleventh streets in the city of Richmond. Said suits involved also the rights of the various creditors of the respective parties interested in the trust estate.

These causes were, in the course of litigation, consolidated or heard together, and, by various decrees entered therein, the rights of all parties to the said suits and others concerned in the property involved were sufficiently and finally determined to warrant, and indeed to require, the court, in the exercise of its judicial discretion, to sell the trust property, in order that the proceeds of such sale or sales might be distributed among the parties entitled thereto. No question was ever raised, it would seem, that a sale of the trust estate was absolutely necessary, inasmuch as a partition thereof in kind among the parties entitled thereto was impracticable. We are concerned, however, on this appeal with only that part of said trust estate spoken of as the "Ford's Hotel" property.

It appears that the burdens on this trust property, in the way of taxes, repairs, and other necessary expenses, were greater than the income from the property, and that creditors of the various parties interested were asserting their rights, and thus more seriously complicating the situation. In this situation the parties, whose rights in the estate were not denied or contested in any way, could neither enjoy the property nor receive any benefit therefrom on account of its chaotic condition, due alone to a contest over

the interest of B. W. Ford, which does not exceed if it is so much as one-fourth of the trust estate.

By reason of the condition of the trust property and the expenses thereof exceeding the income from it, which condition had continued for a long while, negotiations were begun and conducted between the parties holding different interests, which resulted in a decree entered by the trial court on the 26th day of April, 1910, completely settling the rights of all parties and fixing their respective interests in the trust estate. By said decree Robert H. Talley, R. E. Byrd, David M. White, Henry C. Riely, and Addison L. Holladay were appointed special commissioners to sell certain of the trust property, of which "Ford's Hotel" was a part. The decree gave authority to any three or more of the special commissioners to act, and authorized them to sell the property, either privately or at auction, but subject to confirmation by the court. Holladay refused to act, and the other four special commissioners, after duly qualifying as such by executing the bond required of them by the court, and after conference with four of the leading real estate agents in the city of Richmond, decided to offer the real estate in the city, mentioned in the decree, for sale at auction on the 18th day of May, 1910. On the day named "Ford's Hotel" was offered for sale at public auction, but, although the offering was under favorable conditions, the highest bid received for it was $80,000; and thereupon the special commissioners, after they found that they could not obtain a higher bid, withdrew the property.

It further appears that from the 18th day of May, 1910, until the 24th day of May, 1911, the "Ford's Hotel" property was on the market for sale, but the special commissioners received no offer for it. In the meantime the buildings on said property, which had been used as a hotel, had gone so far from bad to worse in their condition that the building inspector of the city declined to permit them to be occupied, and, having been practically vacant for two years, the income therefrom was but a trifle as compared to the yearly taxes thereon and the costs of caring for and protecting the property. Moreover, owing to the condemnation of the buildings by the building inspector, all insurance on them had been cancelled.

On the 16th day of January, 1911, an ordinance of the council of the city of Richmond, approved by its mayor, directed the city's attorney to acquire by gift, purchase, or condemnation the lot or block of land bounded by Broad street on the north, Capitol street on the south, Eleventh street on the west, and Twelfth street on the east, to be used by the city as a site for a court-house and for executive offices. The "Ford's Hotel" property was within the bounds named in said ordinance, and thereupon negotiations were begun between the city's attorney and the three acting special commissioners of the chancery court, which resulted in an agreement on the part of the special commissioners to make report to the court recommending a sale of the "Ford's Hotel" property to the city at the price of ninety thousand dollars cash, that being the highest price that the city would agree to pay, and the commissioners were given to understand that if that offer was not accepted the property would be taken for the city's purposes by condemnation proceedings. Upon the coming in of a report by the three acting special commissioners to the court of the above-mentioned facts, it was made to appear that the offer to sell the hotel property to the city for the price of $90,000 necessarily had to be kept open, as suggested in a communication from the city's attorney, for a period of at least ninety days, to permit the necessary action to be taken by the finance committee and the council of the city upon said offer.

In accordance with said suggestion, the court, by its decree entered January 31, 1911, over the objection of Mary Lee Benet and Charles T. Herndon, two of the numerous parties interested, authorized its acting special commissioners to make an offer in writing to the attorney for the city of Richmond to sell said "Ford's Hotel" property to the city at the price of $90,000, such offer "to remain open for a period of ninety days from the date of this decree, which offer, if accepted by said council of the city of Richmond, will be hereafter confirmed by a decree entered in these causes."

On the 22d day of April, 1911, the special commissioners filed a report stating that the city of Richmond had not accepted the offer made for the "Ford's Hotel" property at $90,000, and asked an extension of the decree of January 31, 1911, for a period

of thirty days, which request the court, by its decree of April 24, 1911, granted.

Within the limits of this extension, the special commissioners reported to the court that the city of Richmond had, through its attorney, agreed to purchase the "Ford's Hotel" property at the price of $90,000; whereupon the court, by its decree of May 24, 1911, after stating its reasons for so doing, proceeded to confirm the sale of this property to the city, as follows: "Accordingly, the court doth overrule the exceptions of Mary Lee Benet and Charles Thomson Herndon to the report of Special Commissioners Robert H. Talley, David Meade White, and Henry C. Riely, dated May 22, 1911, and doth adjudge, order, and decree that the above-mentioned offer of the city of Richmond for said Ford's Hotel property, be and the same is hereby, accepted, and that the sale of the said Ford's Hotel property to the city of Richmond, Va., at the price of ninety thousand ($90,000) dollars, payable in cash, be, and the same is hereby, confirmed."

From said decree of May 24, 1911, Mary Lee Benet and Charles Thomson Herndon obtained this appeal, and the sole question presented is whether or not the court erred in confirming a sale of the "Ford's Hotel" property to the city of Richmond, under the circumstances and conditions surrounding the property at that time.

We have already stated in this opinion many of those circumstances and conditions, all of which and other cogent facts are set out in the court's decree of confirmation as not only justifying, but requiring, the entry of the decree, and which seem to us all sufficient to show that the court's action was to the best interest of all parties concerned in its ruling.

We know of no valid reason why a court of equity, under like circumstances and conditions, should not negotiate through its duly-appointed commissioners for a private sale of property, especially when a public sale had been attempted, after due advertisement, and failed to bring a purchaser for the property at a satisfactory price, and when delay of a sale, as in this case, involved serious depreciation in the value of the property already yielding no income comparable to the costs and expenses necessarily incurred in preserving and protecting it. The controlling

purpose and prime object in all cases is to sell the property so that it may realize the best price obtainable. *First Nat'l Bank* v. *Trigg Co.*, 106 Va. 327, 56 S. E. 158, 7 L. R. A. (N. S.) 744; *Watkins* v. *Jones*, 107 Va. 8, 57 S. E. 608. The court should exercise a sound legal discretion, with a view to fairness, prudence, and just regard to the rights of all concerned; but when the action of the court in confirming a sale of property under its control is complained of, the burden is upon the complaining party to show that he has been injured. If the grounds relied on for the setting aside of a judicial sale go to the very substance of the contract, such as fraud, accident, mistake, or misconduct on the part of the purchaser or other person connected with the sale, which has worked injustice to the party complaining, the rule governing in determining whether the sale should be set aside or not is very different from the rule controlling where the question is whether the price at which the property was sold is entirely inadequate. *Patterson* v. *Eakin*, 87 Va. 56, 12 S. E. 144; *Moore* v. *Triplett*, 96 Va. 603, 32 S. E. 50, 70 Am. St. Rep. 882.

In this case appellants rely alone on their contention that the price obtained for the property is inadequate, but do not sustain the contention by any proof offered or to be found from the facts already appearing in the record; the only proof offered being the affidavits of three persons, who say that they are experienced in the real estate business, and who only express their opinion that the "Ford's Hotel" property is worth more than the price at which the court ordered its sale. Furthermore, no evidence whatever is offered as to how or from whom a better price for the property could probably be obtained. The other proof in the case abundantly shows that $90,000 was not only a fair price for the property, but all that could have been obtained for it. The property, as we have seen, had been offered for sale at public auction and under the most favorable conditions, but a bid of $80,000 only could be obtained for it.

"The highest bid at an open judicial sale, fairly conducted, after full notice, in the face of such competition as can be attracted, is a fair and just criterion of the value of the property at that time. After-stated opinions, affidavits of under-value, and the like, are regarded with little favor, and are entitled to

little weight in comparison with the fact established by the auction and its results." *Nitro-Phos. Syn.* v. *Johnson,* 100 Va. 774, 42 S. E. 995, citing *Todd* v. *Gallego Mills,* 84 Va. 586, 5 S. E. 676. See also Hogg's Eq. Pro., sections 403, 683; *Hazlewood* v. *Forrer,* 94 Va. 703, 27 S. E. 507; *Bradford* v. *McConahay,* 15 W. Va. 732.

There are other facts appearing in the record of the combined causes in which the decree here complained of was entered going to show that it was manifestly to the best interest of all parties concerned that the "Ford's Hotel" property be sold, as it was, to the city of Richmond, at the price obtained therefor ($90,000), but we do not deem it necessary to review the facts further. The appellants doubtless hoped, and perhaps believed, that further efforts in that direction on the part of the court would result in obtaining a higher price for the hotel property, but they furnished the court with no data upon which it would have been warranted in refusing to confirm the sale of the property to the city of Richmond. Therefore, it very plainly appears that they have not successfully borne the burden upon them of showing error in the decree of which they are here complaining.

The decree appealed from is without error, and, therefore, it is affirmed.

*Affirmed.*