# Richmond

MILDRED EDDY DUNN v. W. H. SILK, ET ALS.

November 13, 1930.

Present, Prentis, C. J., and Holt, Epes, Gregory and Browning, JJ.

*R. B. Stephenson* and *C. C. Collins,* for the appellant.

*H. H. Byrd, Bryan Carver,* and *Revercomb & Revercomb,* for the appellees.

HOLT, J., delivered the opinion of the court.

This is a suit brought to partition a valuable tract of land in Bath county, containing about 445 acres. The trial court became satisfied that partition in kind could not be had, and ordered sale. Commissioners appointed for the purpose did sell it at public auction, on May 11, 1929, to Mrs. Mildred Eddy Dunn, for the sum of $21,000. Their report is as follows:

"In obedience to a decree entered in the above styled cause at the April term, 1929, your undersigned commissioners made sale on the premises May 11, 1929, of the lands in the bill and proceedings mentioned, after very exhaustive and wide advertisements by hand bills and colored signs posted within a radius of 100 miles of Warm Springs, and as far west as Charleston and Parkersburg, W. Va., and by advertisement in the *Bath County Enterprise* and the *Covington Virginian* and *Richmond Times-Dispatch,* and the sale was fairly well attended. We first offered the two tracts separately and the bids were held totalling $19,300 and the property as a whole was then offered as a whole and struck off to Mrs. Mildred Eddy Dunn at the gross price of $21,000, that being the last and highest bid. Whereupon Mrs. Dunn paid to H. H. Byrd, bonded commissioner, $7,000, in cash, and executed her two notes payable in one and two years each in the sum of $7,000, with interest from date and waiver of homestead, with Capt. Wm. McKee Dunn as her security, and while your commissioners feel that the property sold under its value we did everything possible to give the sale publicity and the

$21,000 was the best that we could get, and we recommend a confirmation of the sale, unless an upset bid be filed which complies with the law governing upset bids, in which case we would not recommend a confirmation as we believe the property is worth more than $21,000."

Shortly thereafter this upset bid was put in:

"Your petitioner, W. H. Silk, of New York City, desires to put in an upset bid in the sum of $23,100 on the B. A. Gwin farm, which was sold at public auction on the premises May 11, 1929.

"Your petitioner respectfully represents that he was ignorant of this sale and at the time the sale was conducted was in the city of New York. That shortly afterward he had occasion to come to Hot Springs on a visit and at this time learned that the farm, consisting of 445 acres, had been sold at a judicial sale."

The trial court being of opinion that $21,000, the sum offered by Mrs. Dunn, was an inadequate price, said so in its decree of June 24, 1929. The upset bid was received. The bidding was reopened, there were no other offers to purchase, and so Mr. Silk's bid of $23,100 was accepted. The court in said decree stated that this latter sum was fair and adequate, and it is from this decree that an appeal has been allowed.

Later on, these sale commissioners, in what is termed a report of sale, after reciting all that had gone before, stated that the sum offered in the upset bid more nearly approximated the real value of the property, and that the court, in their judgment, acted wisely when its acceptance was decreed.

■ No fraud or sharp practice is suggested and so we have before us merely the naked effect of an upset bid of ten per cent, made by a bidder not present at a sale fully and fairly advertised, as against a purchaser who has fully complied with its terms. It will be noted that the trial

judge believed $23,100 was a fair and adequate price. If we take his judgment in this particular to be sound, $21,000 could not have been grossly inadequate. The assessed value was $7,875. From the affidavits of William McKee Dunn, who was present at the sale, and of J. B. Greenway, the auctioneer, who was well acquainted with values in that county, $21,000 appears to have been a fair price, and was, as we have seen, the highest offer received at a sale widely advertised. The day was fair and there were a goodly number of possible bidders present. Neither *ex parte* affidavits nor values fixed for taxation are usually very convincing, but they have some value and no counter affidavits have been filed on behalf of the defendants in error.

■ "A practice prevailed in England prior to the act of 30 and 31 Vict., chapter 48, of opening the biddings in a judicial sale upon the receipt of an advance bid before confirmation, usually required to be an advance of ten per cent." 11 A. L. R. 400. 35 C. J., page 105; Minor on Real Property, section 637; *Everett* v. *Forst*, 50 App. D. C. 215, 269 Fed. 867.

The English rule did not receive there whole-hearted support, and was criticised by Lord Chancellor Eldon in *Andrews* v. *Emerson*, 7 Ves. Jr. 420, and in *White* v. *Wilson*, 14 Ves. Jr. 151. As we have seen it has since been changed by statute.

The heavy weight of authority in this country is against it. 35 C. J. 105; 16 R. C. L., section 70; 11 R. C. L. 399; *Everett* v. *Forst, supra; Jacobsohn* v. *Larkey* (C. C. A.), 245 Fed. 538, L. R. A. 1918C, 1176; *Graffam* v. *Burgess*, 117 U. S. 180, 6 S. Ct. 686, 29 L. Ed. 839; *Pewabic Mining Co.* v. *Mason*, 145 U. S. 349, 12 S. Ct. 887, 36 L. Ed. 732; *Ballentyne* v. *Smith*, 205 U. S. 285, 27 S. Ct. 527, 51 L. Ed. 803.

In the case last cited Mr. Justice Brewer said, at page 290 of 205 U. S., 27 S. Ct. 527, 528: "In England the old rule

was that in chancery sales, until confirmation of the master's report, the bidding would be opened upon a mere offer to advance the price ten per cent; but this rule has been rejected, and now both in England and this country a sale will not be set aside for mere inadequacy of price, unless that inadequacy be so gross as to shock the conscience, or unless there be additional circumstances against its fairness. But if there be great inadequacy, slight circumstances of unfairness in the conduct of the party benefited by the sale will be sufficient to justify setting it aside. *Graffam* v. *Burgess*, 117 U. S. 180, 191, 192, 6 S. Ct. 686, 29 L. Ed. 839, 842, 843. It is difficult to formulate any rule more definite than this, and each case must stand upon its own peculiar facts."

This rule of English practice, now no longer the English rule, "has been rejected by a majority of American courts. It has, however, with some modifications, been adopted by some. Under the English rule the biddings seem to have been opened as a matter of course, upon the receipt of the advance bid. In the American jurisdictions—viz., North Carolina, Pennsylvania, Tennessee, West Virginia, and, in the early cases, in Virginia—which incline to the English rule, the courts, with the possible exception of the Tennessee court in its later decisions, have vested a very considerable discretion in the court. The rule seems no stronger than that, in the absence of special circumstances, the biddings will be opened upon the receipt of an advance bid of sufficient amount. The courts which take this view emphasize the fact that the purchaser at a judicial sale is a mere preferred offerer until confirmation." 11 A. L. R. 402.

Many cases dealing with this subject have been before this court, and in most instances decision has rested upon the facts of the particular case rather than upon any special rule of law. Early cases, however, do tend to support the old English rule, and that rule was frequently followed on circuit, as many of our older practitioners can remember.

In *Effinger* v. *Ralston*, 21 Gratt. (62 Va.) 430, Judge Moncure said that the rule of practice in Virginia was the English rule, and quotes from Sugden to the effect that a ten per cent advance is sufficient to open up a sale and sometimes less is enough where large sums are involved.

In *Brock* v. *Rice*, 27 Gratt. (68 Va.) 812, Judge Staples said that confirmation was a matter within the sound judicial discretion of the court, but that sales fairly made should not be set aside merely because the purchaser had gotten a good bargain.

In *Roudabush* v. *Miller*, 32 Gratt. (73 Va.) 454, Judge Anderson said: "In a proper case, where it would be just to all the parties concerned, this court may be understood as having sanctioned a practice in the circuit courts, in the exercise of a sound discretion, of setting aside a sale made by commissioners under a decree, and re-opening the bidding upon the offer of an advanced bid of sufficient amount deposited or well secured; and to that extent the former English practice has been allowed in this State. But it has never been held that it is imperative upon the courts to set aside the sale and reopen the bids. It is a question addressed to the sound discretion of the courts, subject to the review of the appellate tribunal, and the propriety of its exercise depends upon the circumstances of each case, and can only be rightfully exercised when it can be done with a due regard to the rights and interests of all concerned—the purchaser as well as others. Where the sale has been fair, and for a fair price, it should never be set aside when there is good reason to believe that the upset price has been offered to gratify ill will or malice toward the purchaser."

In this case Judge Moncure, in a concurring memorandum, said he thought the English practice was the settled practice in Virginia and could be changed only by legislation.

The rule laid down by Judge Anderson was approved in

*Berlin* v. *Melhorn*, 75 Va. 639, and in *Hansucker* v. *Walker*, 76 Va. 753.

In *Coles* v. *Coles*, 83 Va. 525, 5 S. E. 673, 675, the court concluded a review of earlier cases with this statement: "We think it equally clear that it will ordinarily set aside the sale and open the biddings, at any time before confirmation, upon the offer of a substantial upset bid."

In *Todd* v. *Gallego Mills Mfg. Co.*, 84 Va. 586, 5 S. E. 676, 677, the court said: "The question for us to consider and decide, then, is whether the chancery court erred in refusing to confirm the sale to Todd, and directing a resale on the basis of the upset bid; the said upset bid being a substantial advance of ten per cent, or $12,000, on the real property alone. That the course pursued by the chancellor was the usual course, and was in accordance with the unbroken line of authorities in this State is or must be conceded. There is no case to be found, in this State certainly, where this practice has been overruled by this court. The English practice, before the act known as 'the sale of land by auction act,' passed in 1867, (30 and 31 Vict., chapter 48, section 7), in making judicial sales, was to open the biddings, and to allow a person to offer a larger price than the reported highest bid, and upon such offer being made, and a proportionate deposit paid in, to direct a resale of the property; and this was allowed upon an advance of price, even after confirmation of the sale reported. Ten per cent, upon small sums, and less upon large sums, was considered a sufficient advance to open the biddings. As is set forth by Lord Eldon in *Andrews* v. *Emerson*, 7 Ves. 420, and in *White* v. *Wilson*, 14 Ves. 151, and in *Brooks* v. *Snaith*, 3 Ves. and V. 144, he opened the biddings upon an advance of five per cent. As was said by Judge Moncure in *Effinger* v. *Ralston*, 21 Gratt. 437: 'Such are some of the rules of the English practice on this subject; and the same practice and rules, substan-

tially, exist in this State.' In this State, whether the court will confirm a sale, depends in great measure upon the particular circumstances of each case. The court, in acting upon a report of sale, does not exercise an arbitrary, but a sound legal discretion, in view of all the circumstances. It is to be exercised in the interest of fairness, prudence, and with a due regard to the rights of all concerned."

In *Ewald* v. *Crockett, et al.*, 85 Va. 300, 7 S. E. 386, 387, the receipt by the court below of an upset bid of ten per cent advance was approved, as it was in the *Gallego Mills Case*, quoting from which the court said: "All the cases agree that the court must sell at the best price obtainable; and when a substantial upset bid, well secured and safe, for ten per cent advance, is put in before confirmation, it is as much a valid bid as if made at the auction. This is the settled law of this court, and will doubtless so remain."

In *Moore* v. *Triplett*, 96 Va. 603, 32 S. E. 50, 51, 70 Am. St. Rep. 882, the court in discussing the last two cases said that they did not hold that an upset bid of ten per cent advance should always be accepted, but that these cases merely held "that a substantial and well secured upset bid should be accepted unless there are circumstances going to show that injustice would be done to the purchaser or other persons."

In *Watkins* v. *Jones*, 107 Va. 6, 57 S. E. 608, 609, a ten per cent upset bid was refused; indeed, the bid was more than this, for the original sale was for $2,175, while the upset bid made before confirmation was at an advance of $300. There the sale was made under fair circumstances, the land brought a fair price and confirmation was recommended by the sale commissioners. Keith, P., said: "Of course the object of a sale is to secure the best price for the property, and this result can be best accomplished, not by accepting every upset bid offered under circumstances such as are disclosed by this record, but by the establishment

of and adherence to rules which will inspire confidence in the stability of judicial sales, as was said by Mr. Minor in 2 Min. Inst. (4th ed.) 380, rather than by the introduction of a practice that will induce bidders to feel that judicial sales are not to be seriously taken."

In *Howell* v. *Morien*, 109 Va. 200, 63 S. E. 1073, the commissioners of sale reported a purchase by Howell for $1,435. They also reported that Mr. Sloan, a responsible person, who was not present at the sale and did not know of it, had offered an upset bid of $1,587.50, which was an advance of ten per cent over the Howell bid. This the commissioners recommended should be accepted. The court below did accept the upset bid and ordered a resale, and was reversed on appeal by this court, which based its decision on the reasons advanced in *Watkins* v. *Jones, supra.*

In *Benet* v. *Ford*, 113 Va. 442, 74 S. E. 394, 397, Judge Cardwell, in discussing the evidential value of the highest bid at a judicial sale, quoted with approval this statement of the law from *Nitro-Phosphate Syn.* v. *Johnson*, 100 Va. 774, 42 S. E. 995: "The highest bid at an open judicial sale, fairly conducted, after full notice, in the face of such competition as can be attracted, is a fair and just criterion of the value of the property at that time. After-stated opinions, affidavits of under-value and the like are regarded with little favor, and are entitled to little weight in comparison with the fact established by the auction and its results."

In *Hardy* v. *Coley*, 114 Va. 570, 77 S. E. 458, a ten per cent upset bid was accepted by the court below. It was reversed on appeal. Judge Whittle said: "To a certain extent the English rule formerly prevailed in Virginia, but that practice has been generally condemned by the more recent decisions in the United States and in this State, as tending to discourage bidding and render such sales unstable."

In *Litton* v. *Flanary*, 116 Va. 710, 82 S. E. 692, it appears that land was sold in that suit for $7,560. The commissioners thought this was a reasonable price. An upset bid at an advance of ten per cent was presented; it was accepted, and a resale ordered. This was error. Judge Harrison said: "This court has so often held that it was error to set aside a judicial sale solely because an advance bid of ten per cent had been made that it would be superfluous reiteration to discuss the rule and give the reasons therefore again."

█  As bearing upon the suggestion in the instant case, that the rights of infants are involved, this further observation of Judge Harrison is pertinent: "There is no merit in the suggestion that the rights of infants are involved. This is a sale of land for partition among heirs, some of whom happen to be infants with little more than one-sixth interest in the whole. The settled principles governing judicial sales in cases like this are applicable alike to infants and adults, and have never been disturbed by this court because infants were interested in the subject matter of the sale." *Shultz* v. *Hughson*, 134 Va. 497, 114 S. E. 591; *Sterling* v. *Trust Co.*, 149 Va. 867, 141 S. E. 856.

In *Lillard* v. *Graves*, 123 Va. 193, 96 S. E. 169, it appears that a tract of land in Madison county was sold by a commissioner for $10,500. The court, at the recommendation of this commissioner, who thought the price inadequate, refused confirmation and ordered a resale. Afterwards an upset bid of $11,340 was tendered and accepted. There were a number of affidavits to the effect that the original price was inadequate. The lower court was reversed, and the sale was confirmed to the first bidder. In doing so the court reaffirmed what was said, *supra*, in *Benet* v. *Ford*, as to the evidential value of a price actually obtained at a public sale fairly conducted.

█  Appellees rely upon *Shultz* v. *Hughson*, 134 Va. 497, 114 S. E. 591, 592. There a 350 acre tract of land was

purchased by Hughson at public sale for $17 an acre. The sale was reported to court by commissioners without any recommendation. Before confirmation, Mrs. Shultz, who was present at the sale, induced a friend to put in an upset bid of $20 per acre, afterwards increased to $27. This upset bid this court thought should have been received and so decreed, reversing the lower court. Judge Prentis placed his decision upon the inadequacy of price obtained at the public sale, and said: "The ancient rule that property should not be sold at judicial sales for grossly inadequate prices is still effective." In that case, the increase over the first offer was about fifty-eight per cent. That was accepted as conclusive evidence demonstrating the gross inadequacy of the Hughson bid. The opinion, therefore, is entirely in line with Mr. Justice Brewer's views as expressed in *Ballentyne* v. *Smith, supra,* and places this court in accord with the general current of American decisions.

In *Hamilton* v. *Bowman,* 138 Va. 443, 122 S. E. 342, 343, it appears that a farm was sold for $15,300, and was reported to court without recommendation. On the same day there was an upset bid presented at ten per cent advance. The court refused to confirm the sale and received the upset bid. It was reversed. The commissioners there thought that the original price was inadequate. There were nine affidavits to the effect that it was fair. Judge Prentis said: "The price at which the property was cried off to the appellant is not shown to be grossly inadequate, and the case is controlled by the principles so frequently stated as to require no repetition." And again: "If the auction sale has been fairly conducted after proper advertisement and the property brings a fair price, the sale should generally be confirmed to the highest bidder, notwithstanding the belated upset bid of ten per cent advance thereon, thereafter submitted. If, however, the original bid is grossly inadequate, and this is shown, the sale should

not be confirmed. Of course, the burden of showing such gross inadequacy is upon those who allege it."

In *First National Bank* v. *Wright,* 153 Va. 429, 150 S. E. 255, 256, it appears that land was sold by court commissioners for $7,500. They reported that this sum, in their judgment, was a fair price and recommended confirmation. Afterwards an upset bid of $8,625 was tendered, increased to $9,750 later. These upset bids were received, the bidding reopened, and the property was finally sold to the upset bidder for $10,500, or at an advance of $3,000 over the original sale. Some question as to the good faith of the upset bidder was involved, but the case was reversed and the original bid accepted. Judge Campbell was of opinion that it was governed by *Hamilton* v. *Bowman, supra,* and said: "The fact that the land at a resale brought a substantial sum in excess of the sum realized at the first sale is not conclusive of the question that the land in the first instance sold for an inadequate price. The burden of showing that the original bid is grossly inadequate is upon those who allege it. *Hamilton* v. *Bowman,* 138 Va. 446, 122 S. E. 342. This burden appellees have failed to carry. Their sole reliance is upon the upset bid. That we have not adopted the English practice of opening the biddings merely upon the offer of a reasonable advance over the original bid is settled by the case of *Roudabush* v. *Miller, supra.*"

■ ■ When the court undertakes to sell land, it, like an individual, is naturally anxious to obtain the best possible price, and if there were never to be another sale, an upset bid, however small, might with reason be received, although this does not necessarily follow because the first bidder has some rights. Passing these for the moment, it is to be remembered that judicial sales must continue and so a course of dealing must be mapped out which will, in the long run, operate in the interest at large of those whose

property is forced upon the market and which will also be fair to purchasers who sometimes at cost and inconvenience make arrangements to buy at public offerings. Public bidding should be encouraged and not chilled. Certainly it would not be fostered were it known that the successful bidder would take nothing but the right to bid again at another sale.

One will not trouble himself to buy unless assured that his purchase, fairly made, will stand. He also is entitled to some consideration for he cannot bid and walk away. When property has been knocked off to him, he must abide by his offer, which may be enforced in proper proceedings. *Robertson* v. *Smith*, 94 Va. 250, 26 S. E. 579, 64 Am. St. Rep. 723; *Stout* v. *Philippi Mfg. Co.*, 41 W. Va. 339, 23 S. E. 571, 56 Am. St. Rep. 843; *Morrison* v. *Burnette* (C. C. A.), 154 Fed. 617 (app. dism., 212 U. S. 291, 29 S. Ct. 394, 53 L. Ed. 517). His contingent liability, which though not always controlling must certainly be considered.

■ When inadequacy of price is alone relied upon to support an upset bid, where the sale was fairly held, it should not be received unless it affirmatively appears from the evidence that the inadequacy was gross. As Mr. Justice Brewer observed, in the *Ballentyne Case*, it is difficult to formulate any more definite rule than this, and each case must in a large measure turn upon its own peculiar facts.

■ Measured by what we have said, the upset bidder in this case has no standing. The sale to him must be set aside and that made to Mrs. Dunn confirmed, and it is so ordered.

*Reversed.*