# Richmond

## FEDERAL LAND BANK OF BALTIMORE V. EVERETT P. PARKS, SHERIFF, ETC.

April 28, 1938.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*E. Almer Ames, Jr., I. P. Whitehead,* and *Peyton G. Jefferson,* for the appellant.

No appearance for the appellees.

GREGORY, J., delivered the opinion of the court.

The Federal Land Bank of Baltimore loaned William P. Goffigan the sum of $10,000 and required him to secure the loan by executing a mortgage upon 146 acres of land, more or less, lying in Accomac county. Default was made in payment of the obligation by Mr. Goffigan, and the bank instituted a suit to enforce the mortgage by foreclosure and sale of the property.

Under the mortgage it was agreed that as long as Mr. Goffigan performed the obligation, terms and conditions therein contained he should have possession of the property, but if he failed in those respects or made default in paying the obligation as it matured, then, at the option of the bank, payment of the residue would be accelerated and the whole amount would mature for all purposes. Default was made, and the bank, exercising its option, declared the whole amount remaining unpaid to be due and payable.

The suit was regularly matured and later referred to a commissioner in chancery to ascertain and report upon certain matters specifically directed in the order of reference. The commissioner made and filed his report which was approved by the court.

A decree was entered by which a special commissioner was appointed to make sale of the property. The court directed in the decree that the property was to be "at risk of purchaser from time bid off by him, possession of the premises to be given the purchaser on January 1, 1938, unless sooner vacated * * *." The bank objected to the entry of the decree on account of the provision quoted above, and requested the court to delete it from the decree, but

the court refused to do this. This is the basis for the sole assignment of error.

The position of the bank is that the mortgage contract controls the rights of the parties; that the court had no power to postpone delivery of possession of the property until January 1, 1938; and that the court had no power to require the sale to be made at the risk of the purchaser from the time his bid might be made.

The sale of property in judicial proceedings must be made so as to bring the best price obtainable, and to attain that purpose the sale should be conducted so as to encourage fair, open and competitive bidding. Thus the interest of creditors, debtors and owners of property is promoted.

Judge Riely in *Moore* v. *Triplett*, 96 Va. 603, 32 S. E. 50, 52, 70 Am. St. Rep. 882, said: "Judicial sales are constantly taking place, and it must continue to be so as long as there are debts to be collected, and liens to be enforced. Great care should be observed that the practice of the court in acting upon a report of sale should not be such as to deter or discourage bidders, but such as to induce possible purchasers to attend such sales, to encourage fair, open and competitive bidding in order that the highest possible price be obtained, and to inspire confidence in the stability of judicial sales. This is due not merely to the purchaser, but also to creditors, debtors, and the owners of property which has to be sold by the court."

In *Watkins & Bros.* v. *Jones,* 107 Va. 6, 57 S. E. 608, the principle stated in *Moore* v. *Triplett, supra,* was approved.

In *First National Bank of Richmond* v. *Trigg Company,* 106 Va. 327, 56 S. E. 158, 164, Keith, P., speaking for the court, said: "Now, in the case before us, the property sold consisted of real estate and personal property so connected and related as to render their market value in a degree mutually dependent. The object of the rule in question—indeed the principal object in all cases in a court of chancery—is that property may be so sold as to realize the best price."

Judge Cardwell in *Benet* v. *Ford,* 113 Va. 442, 74 S. E. 394, 396, said: "The controlling purpose and prime object in all cases is to sell the property so that it may realize the best price obtainable."

See also, *Hardy* v. *Coley,* 114 Va. 570, 77 S. E. 458, and *Dunn* v. *Silk,* 155 Va. 504, 155 S. E. 694, 71 A. L. R. 667.

██ The bank and others interested are entitled to have the property sold for the best price obtainable. Does the fact that the court by the decree requires the sale to be at the risk of the purchaser from the time of his successful bid, and the further fact that the court postpones the delivery of possession of the premises to some future date, militate against the principle that the sale must be so conducted as to produce the highest obtainable price? We think it does. Between the day of sale and confirmation the premises might be partially destroyed by fire, or during that time valuable timber might be cut and removed to the detriment of a purchaser. If he were required to assume such risks from the date of his bid, this would effectually discourage bidding and prevent the court from obtaining the highest bid.

A like result would ensue if the delivery of possession of the premises should be postponed. In cases where farm lands are being sold, if the purchasers could be denied possession they would not care to bid. It would be difficult to find a purchaser for property if its possession is to be denied him or its enjoyment postponed.

Under the decree challenged by this appeal we have seen that the court refused to allow any purchaser possession of the premises until January 1, 1938. This would have been approximately six months after the decree of sale. Of course, that particular date has now passed; however, the appeal was granted several months prior to January 1, 1938. Even though the time for delivery of possession provided for in the decree has now passed, we desire to express our disapproval of such action. The principle is wrong. If the delivery of possession could be postponed six months, it might be postponed a year or three years. In this case a

purchaser to whom the sale might have been confirmed, would have been compelled to wait until January 1, 1938, to enjoy his property and then it might have been too late to plant crops for the next season.

It is well settled in Virginia that the successful bidder at a judicial sale has only made the court an offer and nothing more. After confirmation his title relates back to the day of sale.

In *Hildreth* v. *Turner*, 89 Va. 858, 17 S. E. 471, 474, the rule is stated thus: "There is a wide distinction between a bidder at a judicial sale and a purchaser. 'Until confirmed by the court, the sale confers no rights. Until then it is a sale only in a popular and not in a judicial or legal sense.' Rorer on Judicial Sales, p. 55, section 124. 'By the purchase, the purchaser, at a judicial sale, becomes a *party* to the proceedings in which the sale is made.' *Id.,* p. 66, section 152. A bid at the commissioner's sale is a mere offer. 2 Barton's Ch. Pr., p. 1094. By his purchase the purchaser becomes a *quasi* party to the suit. 2 Barton's Ch. Pr., p. 1101, section 353.

"In *Virginia Fire & Marine Ins. Co. et al.* v. *Cottrell*, 85 Va. 857, 9 S. E. 132 [17 Am. St. Rep. 108], Lewis, P., says: 'Until the sale has been confirmed, the proceeding is *in fieri;* the bidder is not considered a purchaser, * * * nor is he compellable before confirmation to complete his purchase; but as soon as the sale is absolutely confirmed, then the contract becomes complete—the bidder, by the acceptance of his bid, becomes a purchaser, and he may be compelled by the process of the court to comply with his contract.' "

See also, *Walker* v. *Smith's Adm'x,* 144 Va. 824, 130 S. E. 768, and Lile's Equity Pleading and Practice, pages 123, 124.

Nothing we have said is intended to disturb the well established principle that the court does not guarantee the title to property it sells. *Caveat emptor* applies to the purchaser at a judicial sale. If there are defects in the title, the successful bidder should except to confirmation of the sale. Usually, in this way his rights may be safeguarded.

We are of opinion that the decree is erroneous and should be reversed and the cause remanded for further proceedings.

*Reversed and remanded.*