LASHI AHNEE CARROLL JONES, AN INFANT

V.

ANNIE C. JONES, ET AL.

Record No. 941037

April 21, 1995

Present: All the Justices

*J. David Chappell* for appellant.

*William A. Cosby, Jr. (James G. Bates,* on brief), for appellee Annie C. Jones.

*E. Carter Nettles, Jr.* for appellee J. Phillip Bain, Jr.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal, we consider whether, in a suit for commutation of dower brought under former Code § 64.1-36,[1] a decree confirming sale of lands owned by an infant heir is void as to the infant because the trial court did not make an affirmative finding that sale of the property would promote the interests of the infant.

On December 17, 1992, Annie C. Jones (Jones) brought a bill to commute dower, alleging a dower interest in certain real property owned by her deceased husband, Waverly T. Jones, Jr., who died intestate on August 7, 1973.[2] At the time of his death, Waverly Jones was survived by his wife and one son, Larry T. Jones.

Larry T. Jones died intestate in March 1986. He was not married at that time and was survived by one daughter, Lashi Ahnee Carroll Jones (Lashi), born February 10, 1984. Lashi was eight years old at the time Jones filed her bill to commute dower.

After the bill to commute dower was filed, the trial court appointed a guardian ad litem to represent Lashi's interests. The guardian ad litem filed an answer, requesting that the property be sold if the trial court should determine "that it is impractical to conveniently lay off and assign in kind aforesaid real estate."

The unimproved property, which consists of 192.94 acres located near Wakefield, is zoned for "agriculture" use. On approximately 41 acres, peanuts are farmed. The remainder of the property consists chiefly of upland timber and timbered swamp. On March 3, 1993, Albert L.C. Nelson, a certified general real estate appraiser, valued the property at $189,000.

---

[1] Former Code § 64.1-36 (repealed 1991), in effect on the date of Jones's husband's death, provided in material part:

In lieu of having her dower assigned, a widow having a vested right of dower in real property, may, where it appears that her dower cannot be conveniently laid off and assigned in kind, petition the court to commute the same. In such event the court may, in its discretion, either require the heirs at law to pay to such widow a gross sum in lieu of dower, . . . or may, if such heirs fail or refuse to make such payment, have such real property sold.

[2] Since Annie Jones's dower interest vested prior to January 1, 1991, when rights of dower and curtesy were abolished by Code § 64.1-19.2, her right of action was preserved under the terms of that statute.

After reviewing Jones's deposition and hearing argument of counsel, the trial court concluded that Jones had a one-third life estate interest in the property, that her dower interest was not susceptible of being assigned in kind, and that Lashi was unable to pay Jones a gross sum in lieu of dower. The trial court then ordered that Jones's dower interest be commuted and that the property be sold by James G. Bates and William A. Cosby, Jr., who were appointed special commissioners for the sale (the commissioners).

After duly advertising the property for sale at public auction, the commissioners conducted the auction, which was attended by seven prospective purchasers and Lashi's guardian ad litem. The highest bid of $106,000 was made by Jack P. Bain, Jr., who deposited ten percent of that amount with the Clerk of the Sussex County Circuit Court. Following the auction, D. Malcolm Glenn contacted Bates and submitted a written offer to purchase the property for $120,000, accompanied by a $2,000 deposit.

In their report to the trial court, the commissioners recommended that Bain's bid not be accepted because it was only slightly higher than the appraiser's $101,155 estimate of the value of timber on the land. In addition, the commissioners noted that the value of the peanut quota on the property was $7,093, and that the combined value of the timber and the peanut quota exceeded the amount of Bain's bid. The commissioners also concluded that the Glenn offer was too low, but made no recommendation regarding whether the trial court should accept that offer.

The guardian ad litem objected to the amounts of both bids and asked the trial court to reject them. Jones also objected to both bids and asked the trial court to reject them and to order a resale of the property with bidding beginning at $120,000.

After hearing argument of counsel, the trial court found that the Bain bid was "adequate, that the conscience of the Court is NOT shocked, and that the circumstance of this cause requires the confirmation of the bid as tendered." The trial court then entered a decree, dated March 22, 1994, confirming the sale to Bain.

On April 12, 1994, 21 days after entry of the decree, the guardian ad litem filed written exceptions to the decree, alleging that the bill to commute dower was barred by the statute of limitations set forth in Code § 8.01-236, and that the bill was based on a statute that does not provide for the sale of an infant's lands. The trial court did not rule on these exceptions.

On appeal, Lashi first argues that the trial court lacked jurisdiction to sell an infant's lands pursuant to a bill to commute dower. She contends that there are only two methods by which an infant's lands may be divested and transferred, namely, by partition suit under Code §§ 8.01-81 to -93, or by suit for sale of lands of persons under a disability pursuant to Code §§ 8.01-67 to -80. Both of these procedures, Lashi notes, require the trial court to find that sale of the property will promote the interests of its owners. Code §§ 8.01-83, 8.01-68. Since former Code § 64.1-36 contains no such requirement and does not authorize specifically the sale of an infant's lands, Lashi contends that an infant's lands cannot be sold in a proceeding brought under that section.

In response, Jones and Bain argue that former Code § 64.1-36 specifically authorizes the sale of real property pursuant to a bill to commute dower, and that the plain language employed by the General Assembly imposes no special requirements restricting or prohibiting the sale of an infant's lands under that section. They contend that, since the trial court's decree of sale made all the findings required by former Code § 64.1-36, the sale is not void as to Lashi. We agree with Jones and Bain.

▮ Former Code § 64.1-36 requires the trial court to make certain findings before it can order a sale of property pursuant to a bill to commute dower. The trial court must determine that: 1) the widow has a vested dower interest in the property; 2) her dower interest cannot be conveniently laid off and assigned in kind; and 3) the heirs at law either cannot or will not pay the widow a gross sum in lieu of her dower interest. Once these requirements are met, the trial court may, in its discretion, order the real property sold. In the present case, it is undisputed that the trial court made these required findings.

▮ Nevertheless, Lashi argues that, because she is an infant, her lands could not be sold unless the sale was conducted as a sale of infant's lands under Code §§ 8.01-67 to -80.[3] We disagree,

---

[3] In a proceeding brought under Code §§ 8.01-67 to -80,

[a] person under a disability, fiduciary, all those who would be the heirs or distributees of the defendant person under disability if he had died at the time of the commencement of this proceeding . . . and all other persons interested in the subject matter of the proceeding, shall be made parties defendant when not parties plaintiff. Code § 8.01-69.

In addition, under Code § 8.01-68, before the trial court may order sale of the property, it must be "satisfied by competent evidence independent of the admissions in the pleadings

because the statutory procedure for the sale of an infant's lands is separate and distinct from the procedure for commutation of a widow's dower interest under former Code § 64.1-36. Nothing in Code § 64.1-36 requires that we superimpose upon it the procedures required by Code §§ 8.01-67 to -80.

If the General Assembly had intended to impose any of the requirements found in Code § 8.01-67 to -80 upon the sale of lands owned by an infant heir under former Code § 64.1-36, it could have included such requirements either within the actual text of the statute or by specific reference therein to Code §§ 8.01-67 to -80. The General Assembly did not choose to add these requirements to former Code § 64.1-36, and we cannot impose them here. When the legislature has used words of a plain and definite import, courts cannot construe them in a manner which amounts to holding that the legislature did not mean what it actually stated. *Allen v. Chapman*, 242 Va. 94, 100-01, 406 S.E.2d 186, 189 (1991).

■ In *Payne v. Payne*, 179 Va. 562, 19 S.E.2d 690 (1942), this Court similarly distinguished between two distinct statutory proceedings. There, the Court ruled that lands co-owned by infants and adults could be partitioned pursuant to the predecessor statutes to Code §§ 8.01-81 to -93, without complying with the separate statutory requirements for sale of infants' lands under the predecessor statutes to Code §§ 8.01-67 to -80. The Court explained:

> This is simply a suit whereby co-parceners have undertaken to obtain partition of land jointly owned by them with infants and other adults in the manner prescribed by law. There is no pretense that the bill bears any resemblance to a suit instituted by a guardian of the infant for the sale of his ward's land under Virginia Code, 1936, section 5335 [now Code §§ 8.01-68 to -69].

*Id.* at 568, 19 S.E.2d at 692.[4]

---

or elsewhere in the proceedings, that [the sale] will promote the interest of an owner of land . . . who is a person under a disability as defined in this chapter."

[4] We note Jones had no standing to bring a partition suit here, because she was not an owner of the property but had only a vested right of dower. *See Coleman v. Virginia Stave & Heading Co.*, 112 Va. 61, 69-70, 70 S.E. 545, 547-48 (1911).

As the Court noted in *Payne*, the statutes governing partition proceedings specifically authorize partition and sale in cases when those entitled to the property may be infants or other persons under a disability. *Id.*; Code § 8.01-83. Nevertheless, we do not agree with Lashi's contention that the absence of any such specific authorization, and of any reference to "infants," in Code § 64.1-36 precludes use of that section to commute a widow's dower interest through sale of an infant's lands.

Code § 64.1-36 provides that the trial court may order sale of real property owned by a decedent's "heirs at law," without qualifying or limiting that term or indicating that the term should not be accorded its ordinary meaning. The "heirs at law" of a deceased person are "those who succeed to his estate of inheritance under statutes of descent and distribution, in [the] absence of testamentary disposition." *Black's Law Dictionary* 723 (6th ed. 1990).

Under this definition, Lashi was the sole heir at law of Waverly T. Jones, Jr., and succeeded to his ownership of the property in question. Her ownership was burdened with the obligation to pay the amount of the commuted dower or suffer the sale of her inherited property. The fact that Lashi was an infant did not impair the trial court's clearly expressed statutory authority to order such a sale of her property under former Code § 64.1-36.

Lashi next argues that Jones's bill to commute dower is barred by the 15-year statute of limitations of Code § 8.01-236, which provides, in material part, that

[n]o person shall make an entry on, or bring an action to recover, any land unless within fifteen years next after the time at which the right to make such entry or bring such action shall have first accrued to such person or to some other person through whom he claims . . . .

Lashi asserts that Jones's right of action arose on her husband's death, on August 7, 1973, and that Jones's bill to commute dower was time-barred since it was filed over 19 years after that date, on December 17, 1992.

We do not reach the merits of this argument, nor do we consider whether Code § 8.01-236 is relevant to the subject matter of Jones's suit, because Lashi failed to raise the statute of limitations as an affirmative defense in a responsive pleading, as required by

Code § 8.01-235. Instead, she first raised this issue after the decree confirming sale was entered. Thus, as argued by both Jones and Bain, Lashi's failure to comply with Code § 8.01-235 precludes further consideration of her argument here.

We next consider Lashi's argument that the price brought at the sale was grossly inadequate and that the trial court thus erred in confirming sale of the property. Since Bain's bid fell significantly below the $189,000 appraisal and was lower than the combined value of the timber and the peanut quota, Lashi argues that the sale resulted in a sacrifice of the property. Lashi also contends that the trial court "closed its eyes" to the appraisal because that evidence had not been reviewed by a commissioner in chancery.

Jones agrees with Lashi's position regarding the purchase price. Bain, however, disagrees and responds that the decree confirming sale should be affirmed because the trial court did not abuse its discretion in accepting the high bid received at the judicial sale.

In considering this issue, we will assume, without deciding, that the trial court improperly failed to give full weight to the appraisal on the grounds that it had not been reviewed by a commissioner in chancery. Nevertheless, we conclude that the fact that both the appraisal and the Glenn offer were higher than Bain's bid does not provide a sufficient basis for reversing the trial court's decree.

"The policy of the courts is to engender and maintain confidence in the stability of judicial sales." *Page v. Commonwealth*, 176 Va. 351, 353, 11 S.E.2d 621, 622 (1940). This assurance is necessary to encourage competitive bidding and buying. *Id.*

The trial court is given broad discretion in determining whether to confirm a judicial sale. *See Schweitzer v. Stroh*, 182 Va. 842, 849, 30 S.E.2d 689, 692 (1944). In making this decision, the trial court is guided in part by the principle that " '[t]he highest bid made at an open judicial sale, fairly conducted, after full notice, in the face of such competition as can be attracted, is a fair and just criterion of the value of the property at that time.' " *Page v. Commonwealth*, 176 Va. at 353, 11 S.E.2d at 622 (quoting *Benet v. Ford*, 113 Va. 442, 447, 74 S.E. 394, 397 (1912)). The trial court also must measure the adequacy of the price obtained based on the entire record, and the court should exercise its discretion to refuse to accept the bid price only if it is so inadequate that it shocks the court's conscience, or if there are addi-

tional circumstances of unfairness. *See Schweitzer*, 182 Va. at 848, 30 S.E.2d at 692.

■ The burden of proving that a bid is grossly inadequate is on the party advancing such argument. *Id.*; *Dunn v. Silk*, 155 Va. 504, 516, 155 S.E. 694, 698 (1930). In the present case, as a matter of law, Jones and Lashi failed to meet this burden of proof.

■ While the Glenn offer represented an increase of approximately 13% over the Bain bid, the amount of this increase is not evidence that will support a conclusion that the land sold for a grossly inadequate price. *See First Nat'l Bank v. Wright*, 153 Va. 429, 433-35, 150 S.E. 255, 256-57 (1929); *E.A. Watkins & Bros. v. Jones*, 107 Va. 6, 7-9, 57 S.E. 608, 609 (1907).[5] The appraisal also does not establish that the trial court abused its discretion in accepting the Bain bid, because an appraisal is not conclusive evidence of market value. Moreover, in the absence of additional evidence, the trial court was entitled to rely on the amount of the Bain bid as the best evidence of actual market value. *See Page*, 176 Va. at 353, 11 S.E.2d at 622; *Benet*, 113 Va. at 447, 74 S.E. at 397.

For these reasons, we will affirm the trial court's judgment.

*Affirmed.*

---

[5] We do not consider the fact that the special commissioners received a letter from Union Camp Corporation, dated May 16, 1994, expressing an interest in the property based on its "rough estimate" that the property was worth "in the $175,000.00 range." This letter was received more than 21 days after the entry of the trial court's confirmation decree, and the substance of the letter expressed nothing more than a tentative interest in purchasing the property.